Shawn A. McMillan, Esq. (State Bar No. 208529)
attyshawn@netscape.net
Stephen D. Daner, Esq. (State Bar No. 259689)
steve.mcmillanlaw@gmail.com
Samuel H. Park, Esq. (State Bar No. 261136)
samuel@muanpark.com
THE LAW OFFICES OF SHAWN A. MCMILLAN, APC
4955 Via Lapiz
San Diego, California 92122
Phone: (858) 646-0069
Fax: (206) 600-4582

Attorneys for Plaintiff, Donna Greenspan

# UNITED STATES DISTRICT COURT,

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA GREENSPAN, an individual; and A.G., a minor, by and through her guardian ad litem, <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF SAN DIEGO, a public entity; JENNIFER WILLIAMS, individually; JOSE PADILLA, individually; SHELLY PAULE, individually; DIONNE PUCKETT, individually; MIKE GREEN, individually; CITY OF SAN DIEGO, a public entity; OFFICER J. TANGREDI, individually; OFFICER G. AVALOS, individually; OFFICER T. SMITH, individually; OFFICER R. CUNANAN, individually; OFFICER J. CLARK, individually; OFFICER J. EPPERSON, individually; OFFICER WILCKEN, individually; OFFICER ULOVEC, individually; OFFICER A. JOHNSON, individually; and DOES 1 through 100, Inclusive, <br><br> Defendants. | Case No.: '13CV0210 LAB DHB <br><br> **COMPLAINT FOR DAMAGES** <br><br> **Claim 1:** Violation of Federal Civil Rights <br><br> **Claim 2:** Monell-Related Claims <br><br> **Claim 3:** Violation of State Civil Rights <br><br> **Claim 4:** Intentional Infliction of Emotional Distress <br><br> **Claim 5:** Negligent Infliction of Emotional Distress <br><br> **Claim 6:** Negligence <br><br> **Claim 7:** Liability for Children's Tort <br><br> **Claim 8:** False Imprisonment <br><br> **Claim 9:** Assault <br><br> **Claim 10:** Battery <br><br> **Claim 11:** Abuse of Process <br><br> **Claim 12:** Invasion of Privacy <br><br> **Claim 13:** Declaratory Relief <br><br> **[JURY DEMANDED]** |

1    Plaintiffs, DONNA GREENSPAN ("Donna" or "Donna Greenspan") and

2    A.G., respectfully represent and allege as follows:

3                                      **JURISDICTION**

4        1.    DONNA GREENSPAN and A.G. bring this civil rights lawsuit

5    pursuant to 42 U.S.C. Section 1983 to redress the deprivation by Defendants, at all

6    times herein acting under color of state law, of rights secured to Plaintiffs under

7    the United States Constitution, including the First, Fourth, and Fourteenth

8    Amendments, and under federal and state law where applicable.

9        2.    Jurisdiction is conferred on this Court by 28 U.S.C. sections

10   1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of

11   all suits brought pursuant to 42 U.S.C. section 1983.  Jurisdiction is also conferred

12   by 28 U.S.C. section 1331 because claims for relief derive from the United States

13   Constitution and the laws of the United States.  This Court has supplemental

14   jurisdiction over those claims of Plaintiffs based on state laws, pursuant to 28

15   U.S.C. section 1367.

16                                       **PARTIES**

17       3.    At all times relevant to this Complaint, Plaintiffs were residents of the

18   COUNTY OF SAN DIEGO, California.  Plaintiff Donna Greenspan is the mother

19   of minor Plaintiff, A.G. (a fictitious name is used herein to protect the minor's

20   privacy). At the time the incidents giving rise to the causes of action in this

21   Complaint occurred, A.G. was 6 years old.

22       4.    At all times applicable herein, the COUNTY OF SAN DIEGO was

23   and is a public entity ("County" or "County of San Diego").

24       5.    At all times applicable herein, the SAN DIEGO HEALTH &

25   HUMAN SERVICES AGENCY ("HHSA" or "CPS") was and is a subdivision,

26   entity, or administrative arm of the COUNTY OF SAN DIEGO.

27       6.    At all times applicable herein, social worker JENNIFER WILLIAMS

28   ("Jennifer Williams" or "Williams") was an individual residing, on information

1   and belief, in the County of San Diego, and an officer, agent, and/or employee of

2   County and HHSA. Defendant Williams is sued herein in her individual capacity.

3       7.     At all times applicable herein, social worker JOSE PADILLA ("Jose

4   Padilla" or "Padilla") was an individual residing, on information and belief, in the

5   County of San Diego, and an officer, agent, and/or employee of County and

6   HHSA. Defendant Padilla is sued herein in his individual capacity.

7       8.     At all times applicable herein, social worker SHELLY PAULE

8   ("Shelly Paule" or "Paule") was an individual residing, on information and belief,

9   in the County of San Diego, and an officer, agent, and/or employee of County and

10  HHSA. Defendant Paule is sued herein in her individual capacity

11      9.     At all times applicable herein, social worker DIONNE PUCKETT

12  ("Dionne Puckett" or "Puckett") was an individual residing, on information and

13  belief, in the County of San Diego, and an officer, agent, and/or employee of

14  County and HHSA. Defendant Puckett is sued herein in her individual capacity.

15      10.    At all times applicable herein, social worker MIKE GREEN ("Mike

16  Green" or "Green") was an individual residing, on information and belief, in the

17  County of San Diego, and an officer, agent, and/or employee of County and

18  HHSA. Defendant Green is sued herein in his individual capacity.

19      11.    Hereinafter, when referred to collectively, the Defendants in

20  paragraphs 6 through 10, inclusive, will be referred to as Social Worker

21  Defendants.

22      12.    At all times applicable herein, the CITY OF SAN DIEGO was and is

23  a public entity ("City" or "City of San Diego").

24      13.    At all times applicable herein, the SAN DIEGO POLICE

25  DEPARTMENT ("San Diego Police Department" or "SDPD") was and is a

26  subdivision, entity, or administrative arm of the CITY OF SAN DIEGO.

27      14.    At all times applicable herein, OFFICER J. TANGREDI ("Officer

28  Tangredi" or "Tangredi"), was an individual residing, on information and belief, in

the County of San Diego, and an officer, agent, and/or employee of City and SDPD, with badge #3299. Defendant Tangredi is sued herein in his/her/its individual capacity. Defendant Tangredi's full name is unknown to these Plaintiffs, therefore, leave of court will be sought to amend this Complaint once his/her/its full name has been ascertained.

15.   At all times applicable herein, OFFICER G. AVALOS ("Officer Avalos" or "Avalos"), was an individual residing, on information and belief, in the County of San Diego, and an officer, agent, and/or employee of City and SDPD, with badge #5323. Defendant Avalos is sued herein in his/her/its individual capacity. Defendant Avalos's full name is unknown to these Plaintiffs, therefore, leave of court will be sought to amend this Complaint once his/her/its full name has been ascertained.

16.   At all times applicable herein, OFFICER T. SMITH ("Officer Smith" or "Smith"), was an individual residing, on information and belief, in the County of San Diego, and an officer, agent, and/or employee of City and SDPD, with badge #4888. Defendant Smith is sued herein in his/her/its individual capacity. Defendant Smith's full name is unknown to these Plaintiffs, therefore, leave of court will be sought to amend this Complaint once his/her/its full name has been ascertained.

17.   At all times applicable herein, OFFICER R. CUNANAN ("Officer Cunanan" or "Cunanan"), was an individual residing, on information and belief, in the County of San Diego, and an officer, agent, and/or employee of City and SDPD, with badge #4863. Defendant Cunanan is sued herein in his/her/its individual capacity. Defendant Cunanan's full name is unknown to these Plaintiffs, therefore, leave of court will be sought to amend this Complaint once his/her/its full name has been ascertained.

18.   At all times applicable herein, OFFICER J. CLARK ("Officer Clark" or "Clark"), was an individual residing, on information and belief, in the County

1  of San Diego, and an officer, agent, and/or employee of City and SDPD, with

2  badge #4284. Defendant Clark is sued herein in his/her/its individual capacity.

3  Defendant Clark's full name is unknown to these Plaintiffs, therefore, leave of

4  court will be sought to amend this Complaint once his/her/its full name has been

5  ascertained.

6      19.    At all times applicable herein, OFFICER J. EPPERSON ("Officer

7  Epperson" or "Epperson"), was an individual residing, on information and belief,

8  in the County of San Diego, and an officer, agent, and/or employee of City and

9  SDPD, with badge #5111. Defendant Epperson is sued herein in his/her/its

10 individual capacity. Defendant Epperson's full name is unknown to these

11 Plaintiffs, therefore, leave of court will be sought to amend this Complaint once

12 his/her/its full name has been ascertained.

13     20.    At all times applicable herein, OFFICER WILCKEN ("Officer

14 Wilcken" or "Wilcken"), was an individual residing, on information and belief, in

15 the County of San Diego, and an officer, agent, and/or employee of City and

16 SDPD, with badge #6019. Defendant Wilcken is sued herein in his/her/its

17 individual capacity. Defendant Wilcken's full name is unknown to these

18 Plaintiffs, therefore, leave of court will be sought to amend this Complaint once

19 his/her/its full name has been ascertained.

20     21.    At all times applicable herein, OFFICER ULOVEC ("Officer Ulovec"

21 or "Ulovec"), was an individual residing, on information and belief, in the County

22 of San Diego, and an officer, agent, and/or employee of City and SDPD, with

23 badge #5323. Defendant Ulovec is sued herein in his/her/its individual capacity.

24 Defendant Ulovec's full name is unknown to these Plaintiffs, therefore, leave of

25 court will be sought to amend this Complaint once his/her/its full name has been

26 ascertained.

27     22.    At all times applicable herein, OFFICER A. JOHNSON ("Officer

28 Johnson" or "Johnson"), was an individual residing, on information and belief, in

the County of San Diego, and an officer, agent, and/or employee of City and SDPD, with badge #3816. Defendant Johnson is sued herein in his/her/its individual capacity. Defendant Johnson's full name is unknown to these Plaintiffs, therefore, leave of court will be sought to amend this Complaint once his/her/its full name has been ascertained.

23. Hereinafter, when referred to collectively, the Defendants in paragraphs 14 through 22, inclusive, will be referred to as Police Defendants.

24. Defendants DOES 1 through 50 are sued as fictitious names, their true names and capacities being unknown to Plaintiff. When ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and those Defendants proximately caused, are responsible for and/or legally liable for Plaintiff's damages as herein alleged. Each reference in this complaint to "Defendant," "Defendants," or a specifically named Defendant refers to and includes all Defendants sued under fictitious names. On information and belief, Plaintiff makes all allegations contained in this Complaint against all Defendants, including DOES 1 through 50.

25. Whenever in this Complaint reference is made to any act of Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1 through 50, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

26. At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiff is informed and believes that each Defendant (including DOES 1 through 50), was and is the agent, employee, principal,

1  employer and/or co-conspirator of each of the remaining defendants and/or vice

2  versa.  In addition, Plaintiffs are informed and believe and on such basis allege

3  that the defendants named hereinabove, and each of them, are responsible in some

4  manner for the occurrences herein alleged, and that each of the above named

5  defendants conspired with, directed, ratified, approved, aided, abetted, and/or

6  jointly collaborated with each of the remaining defendants in committing the acts

7  herein alleged, and/or failed to prevent such acts when having the power and/or

8  duty to do so, with full knowledge of said acts.

9      27.     Plaintiffs are informed and believe and on such basis allege that each

10 of the above named defendants was acting under color of law in committing the

11 acts herein alleged, and that in doing the things herein alleged defendants, and

12 each of them, were acting within the course and scope of their duties as employees

13 or agents of each other.

14                          **COMMON ALLEGATIONS**

15     28.     In March 2003, Plaintiff Donna Greenspan married Howard

16 Greenspan, her high school sweetheart.  Donna and Howard waited until after

17 college to get married, when they were ready to start a family.  Naturally, both

18 Donna and Howard were exceedingly pleased when they learned that Donna was

19 pregnant.  In the fall of 2005, due to birth complications, an emergency C-section

20 had to be performed, and A.G. was born.  Doctors warned Donna and Howard,

21 that having another child could be very risky, due to the complications suffered

22 during A.G.'s pregnancy.  Donna and Howard therefore took great care in

23 nurturing and providing a safe environment for their only child – A.G.

24     29.     By the time he was six years old, A.G., a kindergartner, had

25 developed into an intelligent, sociable and well-adjusted boy.  The family had long

26 since bonded, and, together, Donna, Howard, and A.G. constituted a family unit,

27 entitled to protection under the constitutions of the United States and the State of

28 California, and their related laws.  During the day, Donna worked part time as a

1   member of a business continuity and emergency response team. When Donna had

2   to go to work, she would often rely on Howard, her mother, her mother-in-law, or

3   a babysitter to take care of A.G.

4        30.   On February 22, 2012, while returning from Anaheim to San Diego,

5   Donna placed a call to Howard to tell him she would be back home soon. At the

6   time Donna placed the call, she was less than an hour away from home. During

7   the telephone conversation, Donna heard a loud banging noise on the other side of

8   the phone, followed by a disconnection of the phone call. Afterwards, Donna

9   placed numerous calls to Howard, but could no longer reach him by phone.

10   Donna fretted over why Howard would not pick up or return her calls, and worried

11   about her son, as she rushed home.

12        31.   When Donna arrived home, it appeared that the entire house had been

13   ransacked by a team of burglars. Howard and A.G. were nowhere to be found.

14   Donna immediately dialed 9-1-1, and tried her best to control a rising tide of panic

15   as she informed the dispatcher of what she had seen and heard. That, is when

16   Donna saw a business card on the table, belonging to HHSA social worker,

17   Jennifer Williams. Donna quickly ended the call with the emergency line, and

18   dialed social worker Jennifer Williams. Social worker Williams informed Donna

19   that she "removed" A.G. and placed him in the care of the Polinsky Children's

20   Center. When Donna demanded to know why her child had been seized, and why

21   the child's mother, Donna, had not been notified, social worker Williams refused

22   to provide an explanation. Only later did Donna learn what happened.

23        32.   On February 22, 2012, at approximately 4:00 p.m., while A.G.'s

24   mother was away from home, members of the San Diego Police Department,

25   including, at least, J. Tangredi #3299, G. Avalos #5323, T. Smith #4888, R.

26   Cunanan #4863, J. Clark #4284, and J. Epperson #5111, Wilcken  #6019, Ulovec

27   #6767, and A. Johnson #3816, barged into the Greenspan residence, with guns

28

1    drawn, to execute a search warrant. A.G. was home with his father, Howard

2    Greenspan.

3       33.     Members of the San Diego Police Department handcuffed Howard,

4    seated him in a chair, and began to secure the premises by force of arms. During

5    the search, officers pointed their loaded firearms at both Howard and A.G., with

6    their fingers on the triggers of their weapons. After the officers secured the home,

7    they continued to point their loaded weapons at both Howard and A.G. (a little

8    boy), and began to question Howard harshly. Howard pleaded with the SDPD

9    officers to stop pointing their guns at his six year old little boy, or to at least take

10   their fingers off the triggers of their weapons. However, the officers refused to do

11   so, citing department policy to hold all residents at gunpoint during search and

12   seizure operations. Yet, at no point in time, did A.G. ever represent a threat of

13   immediate physical harm to any of the police officers in the home. Nor, did the

14   little child, A.G., resist arrest or attempt to escape police custody. Only after

15   Howard put his own head to the barrel of the gun, pointed at his son, and indicated

16   that he would not cooperate if they continued putting A.G.'s life at risk, did the

17   officers eventually stop targeting A.G. with their loaded weapons. Plaintiffs are

18   informed and believe and thereon allege that officers held A.G. at gunpoint, as

19   hereinabove alleged, for approximately an hour or more.

20      34.     The officers that pointed their loaded firearms at A.G. acted

21   recklessly, by undertaking a completely unnecessary and unreasonable risk of

22   inflicting grievous bodily injury or death to A.G., a six year old little boy who

23   posed no safety threat at all. Each such officer did so with full knowledge of the

24   reckless nature of his or her actions, and with the malicious and bad faith intent of

25   coercing Howard to unquestioningly obey their commands and/or to secure a

26   confession to a crime under duress, i.e., the threat of grievous harm to his child

27   A.G.

28   / / /

1    35.    Despite witnessing these abhorrent, repugnant, and unlawful actions,

2  the other police officers on scene, who could have stopped their fellow officers

3  from pointing their weapons at A.G., failed to do so. Their failure to intercede

4  and/or prevent the continuing deprivation of Constitutional rights was

5  inexcusable, unjustified, and in gross dereliction of their sworn duties as police

6  officers.

7    36.    Sometime after the police entered the home, A.G.'s regular babysitter

8  arrived on the scene to babysit A.G.  On information and belief, the babysitter

9  offered to take temporary custody of the child until his mother, Donna, arrived –

10  Howard explained that Donna would be home in about twenty minutes. This was

11  an arrangement Howard Greenspan indicated he consented to as A.G.'s father. San

12  Diego Police Officers refused, and instead called the San Diego County Health

13  and Human Services Agency ("HHSA") to request the dispatch of a social services

14  agent to seize the child.

15    37.    Shortly thereafter, HHSA social services agent, Jennifer Williams,

16  arrived on scene.  Although she, too, was advised that Donna was on her way

17  home, and that A.G.'s babysitter was willing to take temporary care of A.G. until

18  Donna's arrival, Jennifer Williams jointly collaborated with the Police Defendants

19  by agreeing to and/or concurring with the decision to seize A.G. and transport him

20  to Polinsky Children's Center, a facility under the ownership, management,

21  stewardship and/or control of the County of San Diego. None of the Defendants

22  bothered to contact A.G.'s mother, Donna, or obtain her permission to seize A.G.

23  Social services agent, Jennifer Williams, with the joint collaboration of San Diego

24  police officers, snatched A.G. from the care and custody of Donna Greenspan,

25  without notice or parental consent, in the absence of exigent circumstances, and

26  without judicial authorization. Said seizure was unlawful and in violation of

27  Plaintiffs' Due Process rights, familial association rights, liberty interests, and

28

1    familial privacy rights, arising under and guaranteed by the First, Fourth, and

2    Fourteenth Amendments of the United States Constitution, among others.

3        38.    Two days later, on February 24, 2012, County social services agent,

4    Jose Padilla, filed a Juvenile Dependency Petition, in relation to the May 22, 2012

5    detention of A.G. The petition was signed under penalty of perjury in that the

6    statement, "I declare under penalty of perjury under the laws of the State of

7    California that the foregoing and all attachments are true and correct," appears at

8    the end of the petition, directly above Jose Padilla's signature.

9        39.    The petition specifically sets out allegations against both parents of

10   A.G. under Welfare and Institutions Code (WIC) §300(b). The "facts" set out in

11   the petition are false, despite having been verified by Jose Padilla under penalty of

12   perjury; and, he knew at the time he verified the petition that the statements

13   contained therein were false either directly or by omission of critical known

14   exculpatory facts. These include, but are not limited to, the fact that (1) possession

15   of the marijuana in question was both legal and authorized under both State and

16   local law, and (2) the marijuana was inaccessible to A.G. Moreover, as described

17   above, Plaintiffs are informed and believe and thereon allege that at the time Jose

18   Padilla filed the Juvenile Dependency Petition he knew, or had reason to know,

19   the material allegations of the petition were false, and/or suppressed known

20   exculpatory evidence that was material to the outcome of the case.

21       40.    At the time the Juvenile Dependency Petition was filed, County of

22   San Diego and HHSA were in possession of no specific, articulable evidence

23   giving rise to a reasonable suspicion that A.G. had been abused or neglected by

24   Donna, or that A.G. was in imminent danger of abuse or neglect by Donna.

25   Moreover, and perhaps more importantly the petition, attested to under penalty of

26   perjury, contains false statements of fact which were, on information and belief,

27   known by Jose Padilla to be false at the time he made them.

28   ///

---

1    41.    Unfortunately, within days after the unlawful seizure, A.G. was
2   sexually molested at the Polinsky Children's Center while under the care and
3   supervision of the County of San Diego. Of course, the County did not itself
4   disclose this to Donna. Rather, on February 25, 2012, during a monitored
5   telephone call between Donna and A.G., A.G. revealed that something "very bad"
6   had happened to him. When Donna pressed her son for details, A.G. became very
7   upset, repeating that it was very bad and that "I didn't want to do it." The
8   monitoring agent(s) or employee(s) of County suddenly disconnected the phone
9   call, preventing Donna from obtaining additional information.

10    42.    Alarmed, Donna immediately rushed off to Polisnky Children's
11   Center to find out what had happened. Social services agents informed Donna that
12   they had already interviewed A.G. and that, notwithstanding A.G.'s immense
13   distress, "it was just a kiss." (Social services agents intentionally concealed the
14   fact that it was "just a kiss" to another child's genital area, and that tongue to
15   tongue kissing was also involved.) Said agents informed Donna that A.G. had
16   been provided a new roommate and that social services agents would monitor the
17   situation. Donna was allowed to see A.G. for only a few minutes but was
18   expressly prohibited from discussing the incident. Donna left the Polinsky
19   Children's Center overcome with fright, anxiety, and fear for the safety of her
20   child, because the persons exercising custody and control of A.G. would not tell
21   her what had happened, prevented her from speaking with her child, and were
22   obviously covering something up.

23    43.    When Donna informed her husband, what had transpired that day, Mr.
24   Greenspan immediately contacted the child abuse hotline to report the incident.
25   This all happened on February 25, 2012.

26    44.    Donna did not discover all of the sordid details until on or about
27   March 2, 2012. On March 2, 2012, while Donna was taking A.G. from soccer to
28   go eat, they made an emergency restroom stop. When Donna went to check A.G.'s

1  pants to see whether he had to change, A.G. became extremely upset.  A.G. stated

2  that it was his private area and he didn't like to have people touch him there.

3  Because the boy was so upset, Donna decided to wait awhile before asking him

4  further questions.  Later that evening, when Donna asked A.G. what the earlier

5  episode was all about, A.G. became very distraught and said it was very bad and

6  he didn't want to do it – that "he made me do it."

7      45.    Having received no response to the child abuse report, made on

8  February 25, 2012, Donna immediately placed another call to the child abuse

9  hotline and contacted her attorney.  Her husband also contacted the San Diego

10  Police Department to determine how best to report the incident to obtain a

11  response.

12      46.    On March 5, 2012, Donna filed a formal police report with the San

13  Diego Police Department.  Police officers came to Donna's home and interviewed

14  A.G.  Afterwards, Donna scheduled an appointment with Chadwick Center for

15  Children & Families for a videotaped forensic interview.  Plaintiffs are informed

16  and believe and thereon allege that, but for Donna and her husband taking action,

17  the County would have buried the incident and concealed the true facts of what

18  happened to A.G. from his parents, and were in fact nearly successful in doing so.

19      47.    Based on the police department's investigation, Donna learned that,

20  during A.G.'s unlawful detention at Polinsky Children's Center, a substantially

21  older boy that the County assigned as A.G.'s roommate sexually molested A.G.

22  Said molestation and sexual battery included, but was not limited to, the older boy

23  forcing A.G. to kiss him with his tongue, forcing A.G. to kiss the older boy on his

24  penis over the clothes, and the older boy kissing A.G. on his penis over his

25  clothes.  The perpetrator threatened A.G. that, if A.G. ever told anyone what

26  happened, he would kill A.G. and harm his mother.

27      48.    Plaintiffs are informed and believe and thereon allege that the

28  County, by and through its agents and employees, knew or had reason to know

1  that the perpetrator of said molestation was likely to commit sexual battery or had

2  a history of sexual abuse, and as such, represented a danger to younger children.

3  Despite this knowledge, County employees failed to use reasonable care to prevent

4  foreseeable harm to A.G.  Further, as the person assuming responsibility for the

5  care and custody of children at Polinsky Children's Center, including the

6  perpetrating child, the County had, at all relevant times, the ability and the duty to

7  exercise control over the child's dangerous propensities, but failed to do so.  The

8  failure to exercise such control was inexcusable.

9       49.    After the referenced molestation occurred, the County placed A.G.

10  with a different roommate, where A.G. was, again, immediately battered.  A.G.'s

11  second roommate ripped a stuffed animal from A.G.'s hands and violently

12  punched him in the face with it.  A.G. never consented to such harmful or

13  offensive contact.  Consequently, A.G. was harmed, both physically and

14  emotionally.  Again, the County failed to use reasonable care to prevent harm to

15  A.G., despite their continuing duty to act reasonably to protect A.G., and despite

16  the fact that A.G. had already been seriously harmed while in the County's

17  custody.  Plaintiffs are informed and believe that the County also knew or had

18  reason to know of the second roommate's violent propensities, and, as such, a

19  reasonable person standing in the County's shoes would not have placed A.G.

20  with him.  But for the County's failure to exercise reasonable care, A.G. would not

21  have been battered at the hands of another juvenile, which harm was foreseeable.

22       50.    As the proximate and actual cause of the County's failure to exercise

23  reasonable care, A.G. has been emotionally damaged in that he continues to suffer

24  from severe fright, worry, apprehension, and fear. A.G. continues to experience

25  nightmares concerning the abuse he sustained and will require long term therapy

26  to undo the substantial harm he has suffered.  It is unknown at this time whether

27  A.G. will ever fully recover from the emotional harm he has suffered at the hands

28  of these defendants.

1     51.    On or about February 27, 2012, social services agents, Jose Padilla

2  and Shelly Paule, filed a Detention Report, purporting to give "evidence"

3  supporting the false allegations contained in the Juvenile Dependency Petition,

4  mentioned above. Plaintiffs are informed and believe and thereon allege that said

5  social services agents signed the report and submitted it to the juvenile

6  dependency court with the intention that it be accepted into evidence and relied

7  upon by the court in rendering its decisions. Plaintiffs are informed and believe

8  and on such basis allege that it is, and was, the duty of Jose Padilla, Shelly Paule,

9  and all HHSA social services agents to accurately and fully report to the Juvenile

10  Court all evidence discovered during dependency investigations, including

11  exculpatory evidence and conflicting evidence favorable to the parents, and that

12  any reasonable social services agent in similar circumstances would know it is

13  unlawful to fail to adhere to such standard. Social services agents, including Jose

14  Padilla and Shelly Paule, breached their duty by including numerous lies,

15  falsifying evidence, and suppressing exculpatory information in the County's

16  Detention Report. This includes, but is not limited to, the fact that (1) possession

17  of the marijuana in question was both legal and authorized under both State and

18  local law, and (2) the marijuana was at all times totally inaccessible to A.G. They

19  also failed to mention that A.G. had been sexually battered in Defendants' care,

20  although having been apprised of the incident on February 25, 2012.

21     52.    Despite the lack of any evidence that A.G. had suffered any abuse, or

22  that Donna represented any danger to A.G., whatsoever, the County continued to

23  detain A.G. County social services agents demanded that Donna file for a

24  Temporary Restraining Order against her husband, Howard, and to divorce him if

25  she wished to regain custody of her child. Plaintiffs are informed and believe and

26  on such basis allege that the San Diego County HHSA, and its social services

27  agents have a well established policy, custom, usage and practice of making

28  similar such unlawful and outrageous demands of parents. Undeterred by

1  demonstrable evidence that A.G. was better off in the care of his mother than in
2  the dangerous hands of County agents, the County and the Social Worker
3  Defendants maliciously refused to return A.G. to his mother and/or family home
4  and/or request immediate dismissal of the juvenile case.

5       53.    On or about March 21, 2012, the County presented the parents of
6  A.G. with a dilemma: either sign a Waiver of Rights, foregoing several important
7  rights, and sign off on a post-dependency Case Plan, in order to regain immediate
8  custody of A.G.; or, take their chances at a full blown trial, which would take
9  place several weeks – or months later. Pursuant to the deal offered, no plea would
10  be entered, and the County would make a recommendation that dependency be
11  terminated. However, under the Case Plan, A.G.'s parents would have to give up
12  important constitutional rights, and submit to continued involvement by HHSA in
13  their lives. Given that her child, A.G., had already been battered at least twice
14  during the short time period that the County had custody of him, and the County's
15  demonstrable willingness to achieve nefarious ends through trickery and deceit,
16  Donna could not afford to take the chance of losing her child into the "system."
17  She therefore signed the deal. In so doing, she gave up the (1) right to a trial or
18  hearing; (2) the right to see and hear witnesses who testify; (3) the right to
19  cross-examine witnesses, the social worker or probation officer who prepared the
20  report, and the persons whose statements are contained in the report; (4) the right
21  to testify on her own behalf and present her own evidence and witnesses; and (5)
22  the right to assert any privilege against self-incrimination in the proceeding.

23       54.    Pursuant to said coerced deal, on or about March 21, 2012, the
24  County, by and through its agents Dionne Puckett and Mike Green, submitted a
25  Jurisdiction/Disposition Report recommending that dependency be terminated and
26  all further hearings vacated. Notwithstanding said recommendation, the
27  Jurisdiction/Disposition Report contained numerous lies, falsified evidence, and
28  omissions of exculpatory information. In addition, due to the abovementioned

Waiver of Rights, Donna was incapacitated from addressing the lies, falsified evidence, and omissions of exculpatory facts.

55.     On or about March 21, 2012, the County returned A.G. to the care and custody of his parents.

56.     Plaintiffs timely filed Cal. Govt. Code §910 Government Claims with the County of San Diego and City of San Diego on July 11, 2012.  The County of San Diego provided notice rejection of claim on September 27, 2012.  *See* **Exhibit "A"**.  The City of San Diego, likewise, provided notice of rejection of claim in a letter dated August 15, 2012.  *See* **Exhibit "B"**

## FIRST CLAIM FOR RELIEF

### FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. § 1983)

### COUNT 1

**(Familial Association, Privacy, Warrantless Seizure of Child/Unlawful Detention; By All Plaintiffs Against Social Worker Defendants; Police Defendants; and DOES 1 through 50, Inclusive)**

57.     Plaintiffs reallege, and incorporate herein as if set forth in full, all of the preceding paragraphs.

58.     Plaintiffs, Donna Greenspan and A.G., are individuals and citizens of the United States, protected by 42 U.S.C. § 1983.

59.     Plaintiffs are informed and believe and thereon allege that the right to familial association guaranteed under, without limitation, the First, Fourth, and Fourteenth Amendments is "clearly established" such that a reasonable social services agent in Defendants' situation would know it is unlawful to remove a child from the care, custody, and control of its parents or to question, threaten, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so.

60.     Defendants, and each of them, had, at all times relevant herein, an affirmative duty and obligation to recognize and conduct themselves in a manner

1   that confirms, provides for, and does not violate the protections guaranteed

2   Plaintiffs under the United States Constitution, including those under the

3   Fourteenth Amendment, to include without limitation, the protection of parental

4   rights, the right to privacy, family integrity and the right to familial relations.

5       61.    Defendants, and each of them, were acting under color of state law

6   when they acted, or knew and agreed and thereby conspired, to violate Plaintiffs'

7   civil rights by, but not limited to, removing, detaining, and continuing to detain,

8   A.G. from the care, custody, and control of his mother, Donna Greenspan, without

9   proper or just cause and/or authority, thereby violating Plaintiffs' rights under the

10  First and Fourteenth Amendment, and as to A.G., rights additionally found under

11  the Fourth and Fourteenth Amendments of the United States Constitution.

12      62.    None of the Defendants obtained nor sought a protective custody

13  warrant prior to seizing A.G., nor, did any of the Defendants seek or obtain

14  Plaintiff Donna Greenspan's consent to remove A.G.  Further, none of the

15  Defendants had specific, articulable evidence to support any reasonable basis for

16  believing that A.G. was in immediate danger of sustaining serious bodily injury or

17  death within the time it would have taken to obtain a protective custody warrant.

18  Indeed, Plaintiffs are informed and believe and thereon allege that Defendants, and

19  each of them, purposefully failed to seek a custody warrant, knowing that

20  insufficient grounds or evidence existed to support such application, and/or, as

21  detailed in Plaintiffs' Second Claim for Relief, below, as a result of an

22  unconstitutional policy, custom, or practice of never obtaining warrants prior to

23  seizing children.  Reasonable and less intrusive alternative means existed to secure

24  both Plaintiffs' civil rights and security, without the warrantless removal of A.G.,

25  yet these defendants, and each of them, intentionally failed to pursue or even

26  investigate such less intrusive alternative means.

27      63.    As to Plaintiff, A.G., Defendants also violated his civil rights by

28  failing to adhere to the requirements of the Fourth Amendment of the United

States Constitution when they seized, detained, questioned, threatened, examined, and/or searched A.G. without the consent of him or his mother, Plaintiff Donna Greenspan, and without obtaining a prior court order or authorizing warrant. Again, no exigent circumstances existed, which might excuse said failure to obtain parental consent or a court order prior to said seizure, in that Donna did not present an imminent danger of inflicting serious bodily injury to A.G. within the time it would take to obtain a court order or warrant.

64.     Said conduct therefore also constitutes a substantive violation of Plaintiffs' rights guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution.  Also, by unlawfully seizing and removing A.G. from Plaintiff Donna's care, or conspiring to do the same, without first providing adequate notice or an opportunity to be heard, Defendants, and each of them, violated Plaintiffs' procedural due process rights.

65.     Defendants committed these unconstitutional acts without proper justification or authority, and without probable cause, exigency, or court order. (*See*, *Mabe v. County of San Bernadino* (2001) 237 F.3d 1101.)

66.     Defendants, and each of them, maliciously violated and/or conspired to violate the civil rights of Plaintiffs, including violation of Plaintiffs' rights found in the Fourteenth Amendment of the United States Constitution, by, but not limited to, removing, detaining, and continuing to detain the minor, A.G., from the care, custody, and control of his mother, without proper or just cause and/or authority, and by use of coercion, duress, or fraud to obtain evidence.  Said acts were taken deliberately, with callous or reckless indifference to the substantial rights of Plaintiffs, or fueled by an evil motive or intent.

67.     As a direct and proximate result of these Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

1    68.    The wrongful and despicable conduct of Social Worker Defendants

2   and Police Defendants, and each of them, as herein alleged was intentional, done

3   with malice, oppression, or fraud, with a callous or reckless indifference to the

4   rights of Plaintiffs, or motivated by an evil intent, such that Plaintiffs are entitled

5   to recover punitive damages in accordance with law and subject to proof at trial.

6                                    **COUNT 2**

7        **(Familial Association / Right to Be Free From Dishonesty of Public**

8        **Employees in Juvenile Court Proceedings, i.e. Perjury, Fabrication of**

9          **Evidence, Suppression of Exculpatory Evidence; By All Plaintiffs**

10       **Against Social Worker Defendants; and DOES 1 through 50, inclusive)**

11    69.    Plaintiffs reallege, and incorporate herein as if set forth in full,

12  paragraphs 1 through 56, inclusive.

13    70.    Plaintiffs are informed and believe and thereon allege that, at all times

14  relevant herein, there existed a clearly established due process right not to be

15  subjected to false accusations on the basis of false evidence that was deliberately

16  fabricated by the government, such that a reasonable social services agent in

17  Defendants' situation would know it is unlawful to lie, fabricate evidence, and/or

18  suppress material exculpatory evidence in court reports or any other document

19  filed with the juvenile court to influence judicial decision making.

20    71.    In fact, Defendants, and each of them, had the affirmative and self

21  evident duty to be truthful, accurate, and complete in petitions, reports, and

22  documents submitted to a sovereign Court with power to adjudicate substantial

23  rights, including parental rights, and to refrain from using improper and deceptive

24  means to obtain judicial sustention of recommendations seeking to disparage

25  Plaintiffs' liberty interests.

26    72.    In doing the things alleged hereinabove, Defendants, and each of

27  them, were acting under color of state law when they acted, or knew and agreed

28  and thereby conspired, to knowingly present false allegations, false or coerced

1  testimony, fabricated evidence, and/or suppress exculpatory evidence, before the

2  Juvenile Court, thereby violating Plaintiffs' rights found in the First and

3  Fourteenth Amendment to the United States Constitution and breaching their duty

4  to Plaintiffs.

5      73.    As a direct and proximate result of these Defendants' violations, and

6  in accordance with 42 U.S.C. § 1983, Plaintiffs' civil rights have been violated in

7  that he has suffered, and will continue to suffer, general and special damages in an

8  amount not yet ascertained but which shall be shown according to proof at trial.

9      74.    The wrongful and despicable conduct of Social Worker Defendants,

10 and each of them, as herein alleged was intentional, done with malice, oppression,

11 or fraud, with a callous or reckless indifference to the rights of Plaintiffs, or

12 motivated by an evil intent, such that Plaintiffs are entitled to recover punitive

13 damages in accordance with law and subject to proof at trial.

14                              **COUNT 3**

15 **(Fourth and Fourteenth Amendment - Failure to Protect; By Plaintiff, A.G.,**

16      **Against Social Worker Defendants; and DOES 1 through 50, inclusive)**

17     75.    Plaintiffs reallege, and incorporate herein as if set forth in full,

18 paragraphs 1 through 56, inclusive.

19     76.    Plaintiff is informed and believes and thereon alleges once the state

20 assumes wardship of a child, the state owes the child, as part of that person's

21 protected liberty interest, reasonable safety and minimally adequate care.  At all

22 times applicable herein, said liberty interest and duty of the state was "clearly

23 established" such that any reasonable social worker would know that a small child,

24 such as A.G., should not be placed in situations where it was reasonably

25 foreseeable that the child would be sexually molested or physically battered by

26 dangerous individuals. Plaintiff is further informed and believes and thereon

27 alleges that the social workers knew or should have known that A.G. was being

28

1   placed in a situation where he could be  sexually molested or physically battered

2   by dangerous individuals.

3       77.    Defendants were acting under color of state law when they breached

4   their duties to A.G., by confining him with an older child of known dangerous

5   propensities and in the absence of adequate supervision.  Said public employees

6   did so without proper justification or excuse.  Further, the actions of said public

7   employees were taken with deliberate indifference to Plaintiff's rights.

8       78.    By these actions, the San Diego and its agents interfered and/or

9   attempted to interfere with A.G.'s constitutionally protected liberty interests, and

10  did so without excuse or justification.

11      79.    As the direct and proximate result of the aforementioned actions of

12  County of San Diego agents, Plaintiff has suffered, and will continue to suffer,

13  physical, mental, and emotional injury, all to an extent and in an amount subject to

14  proof at trial.  Plaintiff has also incurred, and will continue to incur, attorneys fees,

15  costs and expenses, including those authorized by 42 U.S.C. section 1988, to an

16  extent and in an amount subject to proof at trial.

17      80.    On information and belief, the aforementioned Social Worker

18  Defendants, and each of them, acted with malice and with the intent to cause

19  injury to Plaintiff, or acted with a willful and conscious disregard of the rights of

20  Plaintiff in a despicable, vile, and contemptible manner. Therefore, Plaintiff is

21  entitled to an award of punitive damages for the purpose of punishing said Social

22  Worker Defendants, and to deter them and others from such conduct in the future.

23  <u>**COUNT 4**</u>

24  **(Fourth and Fourteenth Amendment - Excessive Use of Force**

25  **By Plaintiff, A.G.,**

26  **Against Police Defendants; and DOES 1 through 50, inclusive)**

27      81.    Plaintiffs reallege, and incorporate herein as if set forth in full,

28  paragraphs 1 through 56, inclusive.

82.     Plaintiff is informed and believes and thereon alleges that the right of a young child to be free of the use of excessive force by a police officer is "clearly established," such that a reasonable police officer in the above mentioned public employees' situation would know it is unlawful to point, and to keep pointed, a loaded weapon at an unarmed six year old child's face in the circumstances mentioned above.

83.     Commencing on February 22, 2012 and continuing through the present, City of San Diego public employees, including, without limitation, Defendants, Tangredi, Avalos, Smith, Cunanan, Clark, Epperson, Wilcken, Ulovec, and Johnson, were acting under color of state law when they acted, agreed, and/or conspired to unlawfully point loaded guns at A.G., or failed to prevent the same. Said public employees did so without proper justification or authority, and without probable cause that the minor, A.G., presented a danger to the officers' safety. Further, the actions of said public employees were taken with deliberate indifference to Plaintiff's rights.

84.     Said City of San Diego public employees maliciously conspired to violate the civil rights of Plaintiff, including violation of the Plaintiff's rights found in the Fourth and Fourteenth Amendment of the United States Constitution, by, but not limited to, using excessive force to terrorize and seize the child A.G., which was greater than was reasonable under the circumstances.

85.     By these actions, the City of San Diego and its agents interfered and/or attempted to interfere with Plaintiff's constitutional rights under the Fourth Amendment, as well as those rights under applicable California Law, rising to the level of a constitutionally protected right. Said actions constitute an inexcusable deprivation of his liberty interests under the Fourth and Fourteenth Amendments.

86.     As the direct and proximate result of the aforementioned actions of City of San Diego agents, Plaintiff has suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to

1   proof at trial.  Plaintiff has also incurred, and will continue to incur, attorneys fees,

2   costs and expenses, including those authorized by 42 U.S.C. section 1988, to an

3   extent and in an amount subject to proof at trial.

4        87.    On information and belief, the aforementioned Police Defendants,

5   and each of them, acted with malice and with the intent to cause injury to Plaintiff,

6   or acted with a willful and conscious disregard of the rights of Plaintiff in a

7   despicable, vile, and contemptible manner. Therefore, Plaintiff is entitled to an

8   award of punitive damages for the purpose of punishing said Police Defendants,

9   and to deter them and others from such conduct in the future.

10                    **SECOND CLAIM FOR RELIEF**

11                  **FOR *MONELL*-RELATED CLAIMS**

12                            **COUNT 1**

13                          **By All Plaintiffs**

14   **Against County of San Diego; Nick Macchione (in his official capacity only);**

15                  **and DOES 1 through 50, inclusive**

16        88.    Plaintiffs reallege, and to the extent applicable, incorporate herein as

17   if set forth in full, each of the foregoing paragraphs.

18        89.    Defendant County of San Diego, including through its HHSA entity,

19   is a "person" within the meaning of 42 U.S.C. § 1983 and subject to Monell

20   liability. *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Defendants, and

21   each of them, acted under color of state law when committing the acts alleged

22   herein, in violation of Plaintiffs' rights.

23        90.    Defendant County of San Diego, including through its entity HHSA,

24   and those Defendants sued in their official capacity who had supervisory and/or

25   policy making authority, had a duty to Plaintiffs Donna Greenspan and A.G. at all

26   times to establish, implement and follow policies, procedures, customs and/or

27   practices (hereinafter referred to as "policy" or "policies") which confirm and

28   provide the protections guaranteed Plaintiffs under the United States Constitution,

1   including those under the First and Fourteenth Amendments, to include without
2   limitation, the protection of the right to familial relations; the right to privacy; the
3   right not to be defamed or stigmatized; the right to be free of governmental
4   deception, trickery, fabrication of evidence, and suppression of exculpatory
5   evidence in juvenile dependency proceedings; and the right to procedural due
6   process. Said defendants also had a duty to use reasonable care to select, assign,
7   supervise, train, control and review the activities of all their agents, officers,
8   employees and those acting under them, including within HHSA, so as to protect
9   these constitutional rights; and to refrain from acting with deliberate indifference
10  to the constitutional rights of Plaintiffs in order to avoid causing the injuries and
11  damages alleged herein.

12      91.    Plaintiffs are informed and believe and thereon allege that as the
13  Director of HHSA, Nick Macchione, was at all times relevant herein, possessed of
14  final policymaking authority in that the County Board of Supervisors delegated
15  such power and responsibility to them, including but not limited to the
16  responsibility to set policies and priorities for HHSA and the supervision and
17  management of staff performing all child welfare services.

18      92.    Based on the duties charged to County of San Diego, including the
19  nature of its work relating to juvenile dependency proceedings, County of San
20  Diego and Nick Macchione knew or should have known of the obvious need to
21  establish customs, policies, and practices required to protect the aforementioned
22  civil rights of parents and their children.

23      93.    Defendant County of San Diego, including through its entity HHSA,
24  established and/or followed policies, procedures, customs, and/or practices which
25  policies were the moving force behind the violations of Plaintiffs' constitutional
26  rights, including those under the Fourth and Fourteenth Amendments, by, but not
27  limited to:

28  / / /

a.   the policy of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent;

b.   the policy of removing children from their family and their homes without first obtaining a warrant when no exigency exists;

c.   the policy of examining children without exigency, need, or proper court order, and without the presence and/or consent of their parent or guardian;

d.   the policy of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated;

e.   the policy of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the Court, causing an interference with parental rights, including those as to familial relations;

f.   by acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings;

g.   the practice of setting forth allegations in Juvenile Dependency Petitions against parents claiming violations of WIC §300 regardless of whether or not specific, articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

h.  the policy, practice, or custom of making knowingly false allegations of child abuse, neglect, or abandonment in Juvenile Dependency Petitions signed under penalty of perjury as a means of intimidating parents, by coercion, into accepting lesser charges, whether true or not and whether justified by extant evidence or not, thereby enabling the county to keep the family in the juvenile dependency system and record the case as a positive outcome for purposes of statistical analysis related to funding by the State and Federal governments; and

i.  the custom, policy, and/or practice of fraudulently charging parents with child abuse where none exists.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.)

94.  County of San Diego, including by and through its entity HHSA and its policymaking officials, breached its duties and obligations to Plaintiffs by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting the Social Worker Defendants, and DOES 1 through 50, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged with at total indifference to the rights of affected parents, including Plaintiffs herein.

95.  County of San Diego knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, cause Plaintiffs to be injured and damaged by County of San Diego's wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies

1    and/or training, and other acts as alleged herein, and that such breaches occurred

2    in contravention of public policy and their legal duties and obligations to

3    Plaintiffs; and that such policies were the moving force behind the violation of

4    Plaintiffs' constitutional rights as alleged herein above. Namely, Plaintiffs' civil

5    rights were violated, as mentioned above, when Social Worker Defendants and

6    DOES 1 through 50, while acting under color of state law and in conformance

7    with official County of San Diego policies, conspired and/or acted to seize

8    Plaintiffs's child without a warrant; and then lied about Plaintiffs in various court

9    reports submitted to the Juvenile Court.

10       96.    These actions, and/or inactions, of County of San Diego are the

11   moving force behind, and direct and proximate cause of Plaintiffs' injuries, as

12   alleged herein; and as a result, Plaintiffs have sustained general and special

13   damages, to an extent and in an amount to be proven at trial. In addition, Plaintiffs

14   have incurred, and will continue to incur, attorneys fees, costs and expenses,

15   including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount

16   subject to proof at trial.

17                              **COUNT 2**

18                           **By All Plaintiffs**

19       **Against City of San Diego; and DOES 1 through 50, inclusive**

20       97.    Plaintiffs reallege, and to the extent applicable, incorporate herein as

21   if set forth in full, each of the foregoing paragraphs.

22       98.    Defendant County of San Diego, including through its San Diego

23   Police Department entity, is a "person" within the meaning of 42 U.S.C. § 1983

24   and subject to Monell liability. *Monell v. Dept. of Social Services* (1978) 436 U.S.

25   658. Defendants, and each of them, acted under color of state law when

26   committing the acts alleged herein, in violation of Plaintiffs' rights.

27       99.    Defendant City of San Diego, including through its entity San Diego

28   Police Department, and those Defendants sued in their official capacity who had

1   supervisory and/or policy making authority, had a duty to Plaintiffs, Donna

2   Greenspan and A.G., at all times to establish, implement and follow policies,

3   procedures, customs and/or practices (hereinafter referred to as "policy" or

4   "policies") which confirm and provide the protections guaranteed Plaintiffs under

5   the United States Constitution, including those under the First, Fourth, and

6   Fourteenth Amendments, to include without limitation, the protection of the right

7   to familial relations; the right to privacy; the right not to be defamed or

8   stigmatized; the right to be free of the use of excessive police force; and the right

9   to procedural due process. Said defendants also had a duty to use reasonable care

10  to select, assign, supervise, train, control and review the activities of all their

11  agents, officers, employees and those acting under them, including within SDPD,

12  so as to protect these constitutional rights; and to refrain from acting with

13  deliberate indifference to the constitutional rights of Plaintiffs in order to avoid

14  causing the injuries and damages alleged herein.

15       100.   Based on the duties charged to City of San Diego, including the

16  nature of its work relating to juvenile dependency matters, City of San Diego

17  knew or should have known of the obvious need to establish customs, policies,

18  and practices required to protect the aforementioned civil rights of parents and

19  their children.

20       101.   Defendant City of San Diego, including through its entity SDPD,

21  established and/or followed policies, procedures, customs, and/or practices which

22  policies were the moving force behind the violations of Plaintiffs' constitutional

23  rights, including those under the Fourth and Fourteenth Amendments, by, but not

24  limited to:

25       a.    the policy of detaining and/or removing children from their family

26             and homes without exigent circumstances (imminent danger of

27             serious bodily injury), court order and/or consent;

28

b.    the policy of removing children from their family and their homes without first obtaining a warrant when no exigency exists;

c.    the policy of examining children without exigency, need, or proper court order, and without the presence and/or consent of their parent or guardian;

d.    the policy of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated;

e.    the policy of pointing firearms on all occupants of a home during the execution of search and seizure warrants, including young children, without probable cause for believing such children represent any danger; and

f.    by acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.)

102.    City of San Diego, including by and through its entity SDPD and its policymaking officials, breached its duties and obligations to Plaintiffs by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their

**COMPLAINT FOR DAMAGES**

1   compliance with Constitutional safeguards; and by deliberately permitting the

2   Police Defendants, and DOES 1 through 50, inclusive, to engage in the unlawful

3   and unconstitutional conduct as herein alleged with at total indifference to the

4   rights of affected parents, including Plaintiffs herein.

5          103.   City of San Diego knew, or should have known, that by breaching the

6   above-mentioned duties and obligations that it was reasonably foreseeable that its

7   agency policies, practices, customs, and usages would, and did, cause Plaintiffs to

8   be injured and damaged by City of San Diego's wrongful policies, or deliberate

9   lack thereof or deliberate indifference to the need for such policies and/or training,

10  and other acts as alleged herein, and that such breaches occurred in contravention

11  of public policy and their legal duties and obligations to Plaintiffs; and that such

12  policies were the moving force behind the violation of Plaintiffs' constitutional

13  rights as alleged herein above. Namely, Plaintiffs' civil rights were violated, as

14  mentioned above, when Police Defendants, while acting under color of state law

15  and in conformance with official City of San Diego policies, conspired and/or

16  acted to seize Plaintiffs' child without a warrant and point a loaded firearm at

17  A.G.'s face for a substantial amount of time.

18         104.   These actions, and/or inactions, of City of San Diego are the moving

19  force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged

20  herein; and as a result, Plaintiffs have sustained general and special damages, to an

21  extent and in an amount to be proven at trial. In addition, Plaintiffs have incurred,

22  and will continue to incur, attorneys fees, costs and expenses, including those as

23  authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at

24  trial.

25  / / /

26  / / /

27  / / /

28  / / /

**COMPLAINT FOR DAMAGES**

## THIRD CLAIM FOR RELIEF

### FOR VIOLATION OF STATE CIVIL RIGHTS

### By All Plaintiffs

### Against All Defendants and DOES 1 through 50, inclusive

105.   Plaintiffs realleges, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

106.   Plaintiffs are informed and believe and thereon allege that County Social Worker Defendants and City Police Defendants, by the use of threats, intimidation, deception, fraud, and coercion (or attempts to threaten, intimidate, deceive, defraud, and coerce), interfered with Plaintiffs' exercise and enjoyment of the rights secured by the United States Constitution and other Federal laws, the Constitution and laws of the State of California, California Government Code section 820.21, and California Civil Code sections 43, 49, 51, 52 (The Unruh Civil Rights Act), and 52.1.

107.   As to the individual Social Worker Defendants, such conduct includes, but is not limited to, the wrongful seizure of A.G., the continued detention of A.G. after any alleged basis for detention had been negated, the procuring of false testimony, fabrication of evidence, refusal to disclose exculpatory evidence in preparing and presenting reports and documents to the Court in relation to dependency proceedings, and the denial of reasonable accommodations, all in violation of the right to familial association and privacy arising under the Fourteenth Amendment.

108.   As to the Police Defendants, such conduct includes, but is not limited to, the wrongful seizure of A.G. and the pointing of a loaded firearm at his face during the execution of the above mentioned search warrant.

109.   Plaintiffs are informed and believe and therefore allege that government searches and seizures are inevitably acts of "political violence" that causes fear, degradation, humiliation, and indignity along with its obvious

physical impacts including confinement.  (*See* **Exhibit "C"**, Doriane Lambelet
Coleman, *Storming the Castle to Save Children: The Ironic Costs of Child Welfare
Exception to the Fourth Amendment*, 47 Wm. & Mary L. Rev. 413, 422 fn. 20
(2005); relied upon for other reasons in *Greene v. Camreta* (9th Cir. 2009) 588
F.3d 1011, 1016.)

110. County of San Diego is vicariously responsible for the conduct of its
social services agents, and City of San Diego is vicariously responsible for the
conduct of its police officers, pursuant to California Government Code section
815.2, and other applicable statutory and case law.

111. As the direct and proximate result of these actions of the County of
San Diego and City of San Diego public employees, Plaintiffs have suffered, and
will continue to suffer, physical, mental, and emotional injury, all to an extent and
in an amount subject to proof at trial.

112. The rights violated by the public employees mentioned herein, and
each of them, are protected by California Civil Code sections 43, 49, 51, and 52.1,
which entitle Plaintiffs to compensatory and punitive damages, injunctive relief,
statutory civil penalty (where applicable) and attorney's fees, as provided for by
the laws and the Constitution of the State of California, and are requested herein.

113. In doing the acts alleged in this Complaint, Social Worker
Defendants, Police Defendants, and DOES 1 through 50, and each of them, knew
or should have known that their actions would, or were likely to, injure and
damage Plaintiffs.  Plaintiffs are informed and believe and thereon allege that the
Social Worker Defendants, Police Defendants, and DOES 1 through 50, and each
of them, intended to cause injury and damage to Plaintiffs, and/or acted with a
willful and conscious disregard of Plaintiffs' rights, thus entitling Plaintiffs to
recover punitive damages as against said social services agents.

///

///

# FOURTH CLAIM FOR RELIEF

## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### By All Plaintiffs Against Social Worker Defendants, Police Defendants, and DOES 1 through 50, inclusive

114.   Plaintiffs reallege, and to the extent applicable, incorporate herein as if set forth in full, each of the foregoing paragraphs.

115.   Plaintiffs are informed and believe that County Social Worker Defendants, and each of them, engaged in the above-mentioned extreme, outrageous, unlawful and unprivileged conduct, including, but not limited to, removing and detaining A.G. from the love and care of his  mother, Donna Greenspan, without court order or exigent circumstances; continuing to detain A.G. for an unreasonable period after any alleged basis for detention had been negated; as to the Police Defendants, the use of excessive force; and as to the Social Worker Defendants, placing A.G. in a situation where it was reasonably foreseeable that A.G. would be sexually battered and consequently was battered; disconnecting a monitored phone to prevent A.G. from telling his mother that he had been sexually battered; preventing Donna Greenspan from asking A.G. about the circumstances of said sexual battery; trivializing the nature of A.G.'s sexual battery to Donna, which actually involved a boy forcing A.G. to kiss his penile area, as "just a kiss," and suppressing the true nature of the molest from A.G's parents, in further aggravation of A.G.'s injuries; failing to conduct a reasonable investigation or report said sexual battery; placing A.G. in a situation where it was reasonably foreseeable that A.G. would be physically battered and was, again, consequently battered; presenting perjured testimony and fabricating evidence to support the County and its social services agents' false and malicious allegations that minor Plaintiff A.G. was being abused and/or neglected by his parents and failing to disclose exculpatory evidence; questioning and obtaining testimony from Plaintiffs through the use of undue influence, coercion, and duress; and continuing

to harass, annoy, and lie to Plaintiffs, and otherwise interfere with Plaintiffs' lives, after any purported exigency or need ceased to exist. These acts exceeded the bounds of common decency usually tolerated by a civilized society.

116. Each of the abovementioned Social Worker Defendants, Police Defendants, and DOES 1 through 50, participated in, conspired with, approved of, and/or aided and abetted the conduct of the remaining culpable parties mentioned herein.

117. Plaintiffs are informed and believe that Social Worker Defendants, Police Defendants, DOES 1 through 50, and each of them, intended to cause harm to Plaintiffs, or acted with reckless disregard for the possibility that Plaintiffs would suffer extreme emotional distress as a result of the outrageous conduct listed above. Further, because County assumed wardship of A.G., it owed the child and his mother, as part of A.G.'s protected liberty interest and Donna's familial liberty interest, reasonable safety and adequate care of A.G. County's social services agents abused this special relationship and/or position which gave them power to damage the Plaintiffs' interest, in egregious fashion; they knew of Plaintiffs' susceptibility to injuries through mental distress in order to inflict trauma; and/or they acted intentionally or unreasonably with the recognition that the acts were likely to result in illness through mental distress. Said conduct was done with deliberate indifference to the liberty interests of Plaintiffs, such that said public employees' actions assault and shock the public conscience.

118. As the direct and proximate result of the Social Worker Defendants, Police Defendants, and DOES 1 through 50, extreme and outrageous conduct, Plaintiffs have suffered extreme emotional and physical distress, including but not limited to fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation, and indignity, to an extent and in an amount subject to proof at trial. Nobody, including Plaintiffs, could reasonably be expected to endure the types of

1  affront inflicted upon Plaintiffs without sustaining the type of damages herein
2  alleged.

3      119.   Plaintiffs are informed and believe and thereon allege that County
4  social services agents acted knowingly and wilfully, with malice and oppression,
5  and with the intent to harm Plaintiffs.  Therefore, Plaintiffs are entitled to an award
6  of punitive damages for the purpose of punishing said governmental agents, and to
7  deter them and others from such conduct in the future.

8      120.   County of San Diego and City of San Diego are vicariously
9  responsible for the conduct of their respective public employees, under California
10  Government Code section 815.2 and other applicable statutory and case law.

11                          **FIFTH CLAIM FOR RELIEF**
12          **FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
13  **By All Plaintiffs Against Social Worker Defendants; and DOES 1 through 50**

14      121.   Plaintiffs reallege, and incorporate herein as if set forth in full,
15  paragraphs 1 through 56, inclusive.

16      122.   By virtue of the relationship between A.G. and County, including as
17  between A.G. and the individual County social services agents, a fiduciary duty
18  existed relating to the provision of reasonable care and a safe environment to A.G.
19  Further, because County assumed wardship of A.G., it owed his mother, as part of
20  Donna's familial liberty interest, reasonable safety and adequate care of A.G.  A
21  preexisting relationship between County and Plaintiffs therefore existed at all
22  relevant times mentioned herein.

23      123.   County and its agents and employees, breached their respective duties
24  of care by, but not limited to, continuing to detain A.G. for an unreasonable period
25  after any alleged basis for detention had been negated; placing A.G. in a situation
26  where it was reasonably foreseeable that A.G. would be sexually battered and was
27  consequently battered; disconnecting a monitored phone call in order to prevent
28  A.G. from telling his mother that he had been sexually battered; preventing Donna

1  Greenspan from asking A.G. about the circumstances of said sexual battery;
2  trivializing the nature of A.G.'s sexual battery to Donna, which actually involved a
3  boy forcing A.G. to kiss his penile area, as "just a kiss," and suppressing the true
4  nature of the molest from A.G's parents, in further aggravation of A.G.'s injuries;
5  failing to conduct a reasonable investigation or report said sexual battery; failing
6  to promptly provide aid, comfort, or professional treatment to A.G.; placing A.G.
7  in a situation where it was reasonably foreseeable that A.G. would be physically
8  battered and was, again, consequently battered; presenting perjured testimony and
9  fabricating evidence to support the County and its social services agents' false and
10 malicious allegations that minor Plaintiff A.G. was being abused and/or neglected
11 by his parents and failing to disclose exculpatory evidence; questioning and
12 obtaining testimony from Plaintiffs through the use of undue influence, coercion,
13 and duress; and continuing to harass, annoy, and lie to Plaintiffs, and otherwise
14 interfere with Plaintiffs' lives, after any purported exigency or need ceased to
15 exist.

16     124.   As the direct and proximate result of the County's social services
17 agents negligent conduct, Plaintiffs have suffered extreme emotional and physical
18 distress, including but not limited to fright, nervousness, sleeplessness, anxiety,
19 worry, mortification, shock, humiliation, and indignity, to an extent and in an
20 amount subject to proof at trial. Nobody, including Plaintiffs, could reasonably be
21 expected to endure the types of affront inflicted upon Plaintiffs without sustaining
22 the type of damages herein alleged.

23     125.   Plaintiffs are informed and believe and thereon allege that County
24 social services agents acted knowingly and wilfully, with malice and oppression,
25 and with the intent to harm Plaintiffs. Therefore, Plaintiffs are entitled to an award
26 of punitive damages for the purpose of punishing said governmental agents, and to
27 deter them and others from such conduct in the future.
28 / / /

1    126.   County of San Diego is vicariously responsible for the conduct of its

2    social services agents, under California Government Code section 815.2 and other

3    applicable statutory and case law.

4    ## SIXTH CLAIM FOR RELIEF

5    ## FOR NEGLIGENCE

6    **By All Plaintiffs Against County; Social Worker Defendants; and DOES 1**

7    **through 50, inclusive**

8    127.   Plaintiffs reallege, and incorporate herein as if set forth in full,

9    paragraphs 1 through 56, inclusive.

10    128.   Pursuant to Cal. Welf. & Inst. Code §306(b), each of the Social

11    Worker Defendants owed Plaintiffs the following statutory duty:

12    Before taking a minor into custody, a social worker shall
      consider whether the child can remain safely in his or her
13    residence. The consideration of whether the child can
      remain safely at home shall include, but not be limited
14    to, the following factors:

15    (1) Whether there are any reasonable services
      available to the worker which, if provided to the minor's
16    parent, guardian, caretaker, or to the minor, would
      eliminate the need to remove the minor from the custody
17    of his or her parent, guardian, or caretaker.

18    (2) Whether a referral to public assistance
      pursuant to Chapter 2 (commencing with Section 11200)
19    of Part 3, Chapter 7 (commencing with Section 14000)
      of Part 3, Chapter 1 (commencing with Section 17000)
20    of Part 5, and Chapter 10 (commencing with Section
      18900) of Part 6, of Division 9 would eliminate the need
21    to take temporary custody of the minor. If those services
      are available they shall be utilized.

22
      (3) Whether a nonoffending caretaker can provide
23    for and protect the child from abuse and neglect and
      whether the alleged perpetrator voluntarily agrees to
24    withdraw from the residence, withdraws from the
      residence, and is likely to remain withdrawn from the
25    residence.

26    129.   County and Social Worker Defendants, breached their respective

27    duties of care by, but not limited to, failing to even consider – as they are required

28    to do – whether A.G. could, with the provision of reasonable services, remain

safely with his mother. County and Social Worker Defendants, breached their respective duties of care by, but not limited to, failing to perform any assessment at all, much less the mandatory assessment of the statutory factors, prior to the removal of A.G. from his mother's custody.

130.   As the direct and proximate result of the County's social services agents negligent conduct, Plaintiffs have suffered extreme emotional and physical distress, including but not limited to fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation, and indignity, to an extent and in an amount subject to proof at trial. Statutes, including, without limitation, Cal. Welf. & Inst. Code §306(b), were specifically enacted to avoid the types of harm suffered by Plaintiffs as mentioned herein.

131.   Plaintiffs are informed and believe and thereon allege that County social services agents acted knowingly and wilfully, with malice and oppression, and with the intent to harm Plaintiffs.

132.   County of San Diego is vicariously responsible for the conduct of its social services agents, under California Government Code section 815.2 and other applicable statutory and case law.

## SEVENTH CLAIM FOR RELIEF
## LIABILITY FOR CHILDREN'S TORT
**By All Plaintiffs Against County; Social Worker Defendants; and DOES 1 through 50, inclusive**

133.   Plaintiffs reallege, and incorporate herein as if set forth in full, paragraphs 1 through 56, inclusive.

134.   A special relationship exists between County and the children placed in its ward at Polinsky Children's Center, such that County and its social services agents bear a responsibility to care for and control children placed in their care. As such, County and its social services agents owe a duty to exercise reasonable

1  care to prevent harm to others when they know of any dangerous habits or
2  propensities of children placed in their care.

3      135.   Plaintiffs are informed and believe and thereon allege that, that the
4  first roommate the County assigned to A.G. had a history of sexual abuse, history
5  of committing sexual battery, or some other characteristic which made it
6  foreseeable that the child would likely sexually molest other children placed in a
7  confined area with him.

8      136.   Plaintiffs are informed and believe and thereon allege that, that the
9  second roommate the County assigned to A.G. had a history of committing violent
10  acts, had violent tendencies, or some other characteristic which made it
11  foreseeable that the child would likely batter other children placed in a confined
12  area with him.

13      137.   County and its agents and employees, breached their respective duties
14  to protect A.G., by but not limited to, placing A.G. with children with dangerous
15  predilections and propensities.  A reasonable person standing in the shoes of the
16  County and/or its social services agents would not have placed A.G., a small six
17  year old boy, with much older boys that were likely to batter him.

18      138.   As the direct and proximate result of the County's social services
19  agents negligent conduct, A.G. was sexually and physically battered on at least
20  two occasions with resultant extreme emotional and physical distress, including
21  but not limited to fright, nervousness, sleeplessness, anxiety, worry, mortification,
22  shock, humiliation, and indignity, to an extent and in an amount subject to proof at
23  trial.

24      139.   County of San Diego is vicariously responsible for the conduct of its
25  social services agents, under California Government Code section 815.2 and other
26  applicable statutory and case law.

27  / / /

28  / / /

# EIGHTH CLAIM FOR RELIEF

## FOR FALSE IMPRISONMENT

### By A.G.

### Against County; Social Worker Defendants and DOES 1 through 50, inclusive

140.   Plaintiffs reallege, and incorporate herein as if set forth in full, paragraphs 1 through 56, inclusive.

141.   As mentioned above, County social services agents restrained A.G. by means of physical force and confined him in the Polinsky Children's Center.

142.   Said confinement was nonconsensual, arose from a warrantless search and seizure, happened in the absence exigent circumstances, and without discharging the duties imposed by Cal. Welf. & Inst. Code §306(b).

143.   The above mentioned detention was not authorized by law and took place for an appreciable length of time, i.e. sufficient time for A.G. to be sexually molested and physically beaten on two separate occasions while in the County's custody and care.

144.   As the direct and proximate result of the County's social services agents dereliction of duty, Plaintiff had his familial liberty interests violated, and has suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.  Plaintiff has also incurred, and will continue to incur, attorneys fees, costs and expenses, to an extent and in an amount subject to proof at trial.

145.   In addition to compensatory damages, attorneys fees, and costs, Plaintiff is entitled to punitive damages as authorized by Cal. Civ. Code §3294, in order to deter the Social Worker Defendants, from committing the same egregious acts in the future.

/ / /

/ / /

1    146.   County of San Diego is vicariously responsible for the conduct of its

2    social services agents, under California Government Code section 815.2 and other

3    applicable statutory and case law.

4                                **NINTH CLAIM FOR RELIEF**

5                                     **FOR ASSAULT**

6                                         **COUNT 1**

7                                          **By A.G.**

8    **Against County; Social Worker Defendants; and DOES 1 through 50,**

9                                          **inclusive**

10    147.   Plaintiffs reallege, and incorporate herein as if set forth in full,

11    paragraphs 1 through 80, and 146 through 150, inclusive.

12    148.   As mentioned above, these Social Worker Defendants, and each of

13    them, conspired to violate Plaintiff A.G.'s civil rights, by, but not limited to,

14    seizing and abducting A.G. from the care and custody of Donna Greenspan,

15    without a warrant, parental consent, or exigent circumstances; and committing

16    perjury, fabricating evidence and suppressing exculpatory evidence.  As part of the

17    continuum of events comprising said violations of civil rights, Social Worker

18    Jennifer Williams intentionally, willfully, wantonly, and maliciously threatened to

19    seize A.G.'s person and physically sever him from the care and custody of his

20    mother, without a warrant, without parental consent, and in the absence of exigent

21    circumstances.  Plaintiff A.G. did not consent to such conduct.

22    149.   As a direct and proximate result of the threatening conduct of

23    defendant Jennifer Williams, as mentioned above, coupled with their present

24    ability to carry out the threat, Plaintiff A.G. reasonably felt the imminent

25    apprehension of such contact, and therefore suffered severe emotional distress and

26    other serious injuries to his person, in an amount to be shown according to proof.

27    150.   By joining the conspiracy to violate Plaintiff A.G.'s civil rights,

28    Social Worker Defendants, and each of them, are responsible for all acts done as

1   part of the conspiracy, whether the acts occurred before or after he or she joined

2   the conspiracy, including the aforementioned acts of defendant Jennifer Williams.

3       151.   A.G. is informed and believes that the aforesaid acts were carried out

4   with the base and vile motivation of seizing and abducting A.G., before his

5   mother, Donna Greenspan, could arrive and contest their illegal plan.  Said acts

6   were done with a conscious disregard of Plaintiff A.G.'s right to be free from such

7   tortious and criminal behavior, such as to constitute oppression, fraud or malice

8   pursuant to California Civil Code Section 3294, entitling Plaintiff to punitive

9   damages in an amount appropriate to punish and set an example of said Social

10  Worker Defendants.

11      152.   County of San Diego is vicariously responsible for the conduct of its

12  Social Worker Defendants, under California Government Code section 815.2 and

13  other applicable statutory and case law.

## COUNT 2

### By A.G.

**Against City; Police Defendants; and DOES 1 through 50, inclusive**

17      153.   Plaintiffs reallege, and incorporate herein as if set forth in full,

18  paragraphs 1 through 68, and 81-87, inclusive.

19      154.   As mentioned above, the Police Defendants intentionally acted, or

20  knew and agreed and thereby conspired, to threaten harmful contact to Plaintiff,

21  A.G., including, without limitation, by threatening to seize A.G.'s person and

22  sever him from the care and custody of his mother, without a warrant, and in the

23  absence of exigent circumstances, and by threatening to put a bullet in his head.

24  Plaintiff A.G. did not consent to such conduct.

25      155.   As a direct and proximate result of the threatening conduct of the

26  Police Defendants, as mentioned above, coupled with their present ability to carry

27  out the threat, Plaintiff A.G. reasonably felt the imminent apprehension of such

28

1  contact, and therefore suffered severe emotional distress and other serious injuries

2  to his person, in an amount to be shown according to proof.

3      156.   A.G. is informed and believes that the aforesaid acts were carried out

4  with the base and vile motivation of seizing and collaborating in the abduction of

5  A.G., before his mother, Donna Greenspan, could arrive and contest their illegal

6  plan, and to use A.G. as a pawn to coerce his father, Howard Greenspan, to make a

7  confession and/or give up substantial rights by cooperating with the Police

8  Defendants investigation.  Said acts were done with a conscious disregard of

9  Plaintiff A.G.'s right to be free from such tortious and criminal behavior, such as

10  to constitute oppression, fraud or malice pursuant to California Civil Code Section

11  3294, entitling Plaintiff to punitive damages in an amount appropriate to punish

12  and set an example of said Police Defendants.

13      157.   City of San Diego is vicariously responsible for the conduct of its

14  Police Defendants, under California Government Code section 815.2 and other

15  applicable statutory and case law.

### TENTH CLAIM FOR RELIEF

### FOR BATTERY

### By A.G.

### Against All Defendants; and DOES 1 through 50, inclusive

20      158.   Plaintiffs reallege, and incorporate herein as if set forth in full,

21  paragraphs 1 through 80, and 146 through 150, inclusive.

22      159.   As mentioned above, these Social Worker Defendants and Police

23  Defendants, and each of them, conspired to violate Plaintiff A.G.'s civil rights, by,

24  but not limited to, seizing and abducting A.G. from the care and custody of Donna

25  Greenspan, without a warrant, parental consent, or exigent circumstances; and, as

26  to the Social Worker Defendants, committing perjury, fabricating evidence and

27  suppressing exculpatory evidence.  As part of the continuum of events comprising

28  said violations of civil rights, Social Worker Jennifer Williams, with the

1   concurrence of Police Defendants, intentionally and/or recklessly grabbed A.G.

2   and dragged him to her car.  Neither A.G., nor his mother, consented to the said

3   harmful or offensive touching.

4       160.   Social worker Jennifer Williams did the aforementioned acts with the

5   intent to cause a harmful or offensive contact to the body of Plaintiff, A.G.

6       161.   As a direct and proximate result of the conduct of these Defendants,

7   as mentioned above, Plaintiff suffered severe emotional distress and other injuries

8   to his person, in an amount to be shown according to proof.

9       162.   By joining the conspiracy to violate Plaintiff A.G.'s civil rights,

10  Social Worker Defendants, and each of them, are responsible for all acts done as

11  part of the conspiracy, whether the acts occurred before or after he or she joined

12  the conspiracy, including the aforementioned acts of defendant Jennifer Williams.

13  The Police Defendants, and each of them, are likewise responsible for the acts

14  committed by Jennifer Williams because the knew in advance, concurred, and

15  agreed, with the intended seizure and abduction of A.G.

16      163.   A.G. is informed and believes that the aforesaid acts were carried out

17  with the base and vile motivation of seizing and abducting A.G., before his

18  mother, Donna Greenspan, could arrive and contest their illegal plan.  Said acts

19  were done with a conscious disregard of Plaintiff A.G.'s right to be free from such

20  tortious and criminal behavior, such as to constitute oppression, fraud or malice

21  pursuant to California Civil Code Section 3294, entitling Plaintiff to punitive

22  damages in an amount appropriate to punish and set an example of said Social

23  Worker Defendants and Police Defendants.

24      164.   County of San Diego is vicariously responsible for the conduct of its

25  Social Worker Defendants, under California Government Code section 815.2 and

26  other applicable statutory and case law.

27  / / /

28  / / /

165.   City of San Diego is vicariously responsible for the conduct of its Police Defendants, under California Government Code section 815.2 and other applicable statutory and case law

## ELEVENTH CLAIM FOR RELIEF

## FOR INVASION OF PRIVACY

### By All Plaintiffs

### Against Police Defendants; Social Worker Defendants and DOES 1 through 50, inclusive

166.   Plaintiffs reallege, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

167.   Plaintiff Donna Greenspan and her son, A.G., have a protected liberty interest in the privacy and integrity of their family unit, free of unwarranted governmental intrusion.

168.   County, by and through its Social Worker Defendants, and City, by and through its Police Defendants, intruded upon the privacy of Plaintiffs' family by, but not limited to, removing A.G. from the family home without judicial authorization, without parental consent, and in the absence of exigent circumstances; failing to discharge their duty to consider whether A.G. could remain safely in his residence with his father, prior to removal; and continuing to detain A.G. after any purported reason for doing so had been extinguished or discovered as without basis.  Each and every act mentioned above was carried out intentionally, and with full knowledge of the probable consequences thereof.

169.   Said intrusions upon the family home and privacy interests of Plaintiffs would be highly offensive to any reasonable person, and was, in fact, highly offensive to Plaintiffs.

170.   As the direct and proximate result of the County's social services agents dereliction of duty, Plaintiffs have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to

1  proof at trial.  Plaintiffs have also incurred, and will continue to incur, attorneys

2  fees, costs and expenses, to an extent and in an amount subject to proof at trial.

3      171.   County of San Diego is vicariously responsible for the conduct of its

4  social services agents, under California Government Code section 815.2 and other

5  applicable statutory and case law.

## THIRTEENTH CLAIM FOR RELIEF

## FOR DECLARATORY RELIEF

## COUNT 1

### By All Plaintiffs

### Against County; Social Worker Defendants; and DOES 1 through 50,

### inclusive

12     172.   Plaintiffs reallege, and to the extent applicable, incorporate herein as

13  if set forth in full, each of the foregoing paragraphs.

14     173.   As stated herein, Plaintiffs, as citizen and individuals, are protected

15  by the laws of the State of California, as well as those of the United States

16  Constitution, including the Fourth and Fourteenth Amendments thereto.

17     174.   As stated herein, Defendants County of San Diego, and DOES 1

18  through 50, inclusive, have wrongfully, unlawfully, and with deliberate

19  indifference to the rights of Plaintiffs, and with utter disregard of County's duties

20  and obligations to Plaintiffs, acted, practiced and/or adopted policies, practices,

21  procedures and/or customs which are in violation of the rights of Plaintiffs,

22  including those to be free from governmental interference as to their familial

23  associations and from unreasonable searches or seizures, including those relating

24  to child abuse allegations and related actions and proceedings.

25     175.   County of San Diego has failed to acknowledge their improper,

26  unlawful and unconstitutional actions, conduct and policies at the time of the

27  incidents at issue in the present action, and Plaintiffs are informed and believe, and

28

1  on that basis allege, that presently County of San Diego has not changed or

2  modified such actions, conduct and/or policies to conform to law.

3      176. County's wrongful and unlawful conduct, actions and/or policies,

4  unless and until enjoined and restrained by order of this court, will cause, and

5  continue to cause, great and irreparable injury to Plaintiffs, and other individuals

6  and citizens, in that County of San Diego will continue to act in accordance with

7  said unlawful policies, and with deliberate indifference to their duties and

8  obligations under state and federal law, including those under the Fourth and

9  Fourteenth amendments as alleged hereinabove.

10      177. In addition, so long as A.G., remains a minor, and in the custody and

11  care of Plaintiff Donna Greenspan, all of the acts mentioned herein are repeatable.

12      178. Plaintiffs have no adequate remedy at law to prevent or prohibit

13  County of San Diego from continuing, and/or repeating, its unlawful and

14  unconstitutional conduct and policies other than through injunctive relief, and

15  therefore seeks an order enjoining and prohibiting County of San Diego and

16  HHSA by, but not limited to, the following:

17      a.  the policy of detaining and/or removing children from their family

18          and homes without exigent circumstances (imminent danger of

19          serious bodily injury), court order and/or consent;

20      b.  the policy of removing children from their family and their homes

21          without first obtaining a warrant when no exigency exists;

22      c.  the policy of examining children without exigency, need, or proper

23          court order, and without the presence and/or consent of their parent or

24          guardian;

25      d.  the policy of removing and detaining children, and continuing to

26          detain them for an unreasonable period after any alleged basis for

27          detention is negated;

28

e.   the policy of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the Court, causing an interference with parental rights, including those as to familial relations;

f.   by acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings;

g.   the practice of setting forth allegations in Juvenile Dependency Petitions against parents claiming violations of WIC §300 regardless of whether or not specific, articulable evidence exists at the time to support the claims set out in the petition under penalty of perjury;

h.   the policy, practice, or custom of making knowingly false allegations of child abuse, neglect, or abandonment in Juvenile Dependency Petitions signed under penalty of perjury as a means of intimidating parents, by coercion, into accepting lesser charges, whether true or not and whether justified by extant evidence or not, thereby enabling the county to keep the family in the juvenile dependency system and record the case as a positive outcome for purposes of statistical analysis related to funding by the State and Federal governments; and

i.   i. the custom, policy, and/or practice of fraudulently charging parents with child abuse where none exists.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type

proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.)

## COUNT 2

### By All Plaintiffs

### Against City; Police Defendants; and DOES 1 through 50, inclusive

179.   Plaintiffs reallege, and to the extent applicable, incorporate herein as if set forth in full, each of the foregoing paragraphs.

180.   As stated herein, Plaintiffs, as citizen and individuals, are protected by the laws of the State of California, as well as those of the United States Constitution, including the Fourth and Fourteenth Amendments thereto.

181.   As stated herein, Defendants City of San Diego, and DOES 1 through 50, inclusive, have wrongfully, unlawfully, and with deliberate indifference to the rights of Plaintiffs, and with utter disregard of City's duties and obligations to Plaintiffs, acted, practiced and/or adopted policies, practices, procedures and/or customs which are in violation of the rights of Plaintiffs, including those to be free from governmental interference as to their familial associations and from unreasonable searches or seizures, including those relating to child abuse allegations and related actions and proceedings

182.   City of San Diego has failed to acknowledge their improper, unlawful and unconstitutional actions, conduct and policies at the time of the incidents at issue in the present action, and Plaintiffs are informed and believe, and on that basis allege, that presently City of San Diego has not changed or modified such actions, conduct and/or policies to conform to law.

183.   In addition, so long as A.G., remains a minor, and in the custody and care of Plaintiff Donna Greenspan, all of the acts mentioned herein are repeatable.

184.   City's wrongful and unlawful conduct, actions and/or policies, unless and until enjoined and restrained by order of this court, will cause, and continue to cause, great and irreparable injury to Plaintiffs, and other individuals and citizens,

1   in that City of San Diego will continue to act in accordance with said unlawful

2   policies, and with deliberate indifference to their duties and obligations under state

3   and federal law, including those under the Fourth and Fourteenth amendments as

4   alleged hereinabove.

5   185.   Plaintiffs have no adequate remedy at law to prevent or prohibit City

6   of San Diego from continuing, and/or repeating, its unlawful and unconstitutional

7   conduct and policies other than through injunctive relief, and therefore seeks an

8   order enjoining and prohibiting City of San Diego from, but not limited to, the

9   following:

10   a.   the policy of detaining and/or removing children from their family

11   and homes without exigent circumstances (imminent danger of

12   serious bodily injury), court order and/or consent;

13   b.   the policy of removing children from their family and their homes

14   without first obtaining a warrant when no exigency exists;

15   c.   the policy of examining children without exigency, need, or proper

16   court order, and without the presence and/or consent of their parent or

17   guardian;

18   d.   the policy of removing and detaining children, and continuing to

19   detain them for an unreasonable period after any alleged basis for

20   detention is negated; and

21   e.   the policy of pointing firearms on all occupants of a home during the

22   execution of search and seizure warrants, including young children,

23   without probable cause for believing such children represent any

24   danger

25   (This list is not exhaustive due to the pending nature of discovery and the

26   privileged and protected records of investigative and juvenile dependency type

27   proceedings. Plaintiffs may seek leave to amend this pleading as more information

28   becomes available.)

1

## JURY DEMAND

2   Plaintiffs, Donna Greenspan and A.G., demand a jury trial as to all issues so

3 triable.

4

## PRAYER

5   **WHEREFORE**, Plaintiffs, Donna Greenspan and A.G., prays for judgment

6 against Defendants, as to all causes of action, as follows:

7   1.   General damages and special damages according to proof, but in no

8 event less than $1,000,000;

9   2.   As against only the individual defendants and not any municipality,

10 punitive damages as allowed by law;

11   3.   Attorneys fees pursuant to 42 U.S.C. § 1988, and any other

12 appropriate statute;

13   4.   Injunctive relief, both preliminary and permanent, as allowed by law,

14 (including preliminary injunctive relief to be based upon a separate application);

15   5.   Costs of suit incurred herein; and

16   6.   Such further relief as the Court deems just and proper.

17

18   Dated: January 25, 2013          THE LAW OFFICES OF SHAWN A. MCMILLAN, APC

19

20   _____

21   Shawn A. McMillan, Esq.
Stephen D. Daner, Esq.

22   Samuel H. Park, Esq.
Attorneys for Plaintiffs,

23   Donna Greenspan and A.G.

24

25

26

27

28