THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By CHRISTOPHER J. WELSH, Senior Deputy (State Bar No. 120766)
1600 Pacific Highway, Room 355
San Diego, California 92101
Telephone:  (619) 557-4039
Facsimile:  (619) 531-6005
E-mail: christopher.welsh@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Jenifer Williams, Jose Padilla, Shelly Paule, Dionne Puckett and Mike Green

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA GREENSPAN, an individual; and A.G., a minor, by and through her guardian ad litem,<br><br>   Plaintiff,<br><br>   v.<br><br>COUNTY OF SAN DIEGO, a public entity; JENNIFER WILLIAMS, individually; JOSE PADILLA, individually; SHELLY PAULE, individually; DIONNE PUCKETT, individually; MIKE GREEN, individually; CITY OF SAN DIEGO, a public entity; OFFICER J. TANGREDI, individually; OFFICER G. AVALOS, individually; OFFICER T. SMITH, individually; OFFICER R. CUNANAN, individually; OFFICER J. CLARK, individually; OFFICER J. EPPERSON, individually; OFFICER WILCKEN, individually; OFFICER ULOVEC, individually; OFFICER A. JOHNSON, individually; and DOES through 100, Inclusive,<br><br>   Defendants. | No. 13cv0210-LAB (DHB)<br><br>**ANSWER TO COMPLAINT AND REQUEST FOR JURY TRIAL FILED ON BEHALF OF DEFENDANTS COUNTY OF SAN DIEGO, JENIFER WILLIAMS, JOSE PADILLA, SHELLY PAULE, DIONNE PUCKETT AND MIKE GREEN**<br><br>Courtroom 14A (Annex)<br>Honorable Larry Alan. Burns<br>Trial Date:  None Set |

Defendants County of San Diego, Jenifer Williams, Jose Padilla, Shelly Paule, Dionne Puckett and Mike Green ("Defendants") request a jury trial and file the following Answer to Plaintiffs' Complaint:

13cv0210-LAB (DHB)

1. Defendants admit the allegations in paragraphs: 3-11, 43, 56, 58, 60, 70, 71, 90.

2. Defendants deny the allegations in paragraphs: 27, 40, 64-68, 73, 74, 78-80, 93-96, 106, 107, 109, 111-113, 115-120, 123-126, 129-132, 139, 142, 143, 144, 145, 146, 148-152, 159-164, 168-171, 174-177.

3. Defendants are without sufficient information or personal knowledge regarding the allegations in this paragraph to either admit or deny them under oath as to paragraphs: 28-30, 32, 34, 35, 44, 50, 91.

4. Defendants answers to each of the incorporated paragraphs are incorporated by this reference as to paragraphs: 57, 69, 75, 81, 88, 97, 105, 114, 121, 127, 133, 140, 147, 153, 158, 166, 172, 179.

5. Defendants believe this paragraph is not addressed to these defendants and is not appropriate for an admission or denial by defendants, therefore defendants are without sufficient information or personal knowledge regarding the allegations in this paragraph to either admit or deny them under oath as to paragraphs: 1, 2, 12-23, 26.

6. Paragraphs which contain multiple allegations cannot be admitted or denied in their entirety are addressed as follows:

>Paragraph 31. Admit that Jenifer Williams is a social worker for the County of San Diego and that she participated in taking A.G. into protective custody and placing A.G. at Polinsky Children's Center. Deny that Jenifer Williams refused to explain the reasons for placing A.G. at Polinsky Children's Center to Donna Greenspan. Defendants are without sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

>Paragraph 33. Admit that the police handcuffed Mr. Greenspan and seated him in a chair. Admit that the police had weapons. Deny that A.G. was being held at gunpoint by the time Jenifer Williams arrived. Defendants are without

///

sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

Paragraph 36. Defendants admit that police officers requested HHSA to provide a social worker at the house where Mr. Greenspan was being arrested so the social worker could follow the Drug Endangered Children protocol and place A.G. into protective custody and take him to Polinsky Children's Center. Admit that a woman saying she was A.G.'s babysitter approached outside the house while Jenifer Williams was at the Greenspan home. Defendants are without sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

Paragraph 37. Admit that Jenifer Williams arrived at the Greenspan house and that she took part in the decision to place A.G. in protective custody and take him to Polinsky Children's Center. Admit that a woman saying she was A.G.'s babysitter approached outside the house while Jenifer Williams was at the Greenspan home. Deny that AG was "snatched" from the care of Mrs. Greenspan as she was not present and before taking AG to Polinsky Children's Center Jenifer Williams asked Mr. Greenspan to sign consent and authorization forms and he agreed to do so. Admit that a court order authorizing the placement of A.G. in protective custody was not obtained. Deny that exigent circumstances did not exist, as Mr. Greenspan was being arrested and taken to jail, Mrs. Greenspan was not home and contact information was not provided by Mr. Greenspan, there was no background information on the babysitter, the Drug Endangered Children protocol required A.G. to be screened for drugs, the home was full of drugs as described in the police report and the police indicated that they planned to take Mrs. Greenspan into custody if she returned.

Paragraph 38. Admit that Jose Padilla filed a Juvenile Dependency Petition on February 24, 2012 and signed it under penalty of perjury. Deny that the date of detention was May 22, 2012.

1    Paragraph 39.  Admit that the Juvenile Dependency Petition sets out allegations against Mr. and Mrs. Greenspan.  Deny the remaining allegations in this paragraph.

Paragraph 41.  Admit that there was a miscommunication and while he was at Polinsky Children's Center A.G. was reportedly in contact with another young boy who talked him in to kissing on the lips and that after he was home from Polinsky Children's Center A.G. reported they had also kissed each other over clothing in the area of the penis.  Deny that the County knew of this information before A.G. told Mrs. Greenspan but failed to disclose it.  Defendants are without sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

Paragraph 42.  Admit that there was miscommunication and while he was at Polinsky Children's Center A.G. was reportedly in contact with another young boy who talked him in to kissing on the lips.  Deny that the County knew of this information before A.G. told Mrs. Greenspan but failed to disclose it.  Deny that there was a cover up.  Admit that the County instructed Mrs. Greenspan not to discuss the incident further with A.G. pending an interview.  Defendants are without sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

Paragraph 45.  Deny that there was no response to the report that A.G. had been talked into kissing another boy at Polinsky Children's Center.  Defendants are without sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

Paragraph 46.  Deny that Mrs. Greenspan scheduled the forensic interview at Chadwick Center.  Deny that the County was going to conceal facts regarding A.G.  Defendants are without sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

///

Paragraph 47.  The County is not permitted at this time to reveal specific information regarding the other boy at Polinsky Children's Center.  Admit that A.G. reported that he was talked into kissing the other boy on the lips and that they reportedly kissed each other over the pants in the area of the penis.  Defendants are without sufficient public information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

Paragraph 48.  The County is not permitted at this time to reveal specific information regarding the other boy at Polinsky Children's Center.  Deny that the Social Workers monitoring A.G. or the other boy at Polinsky Children's Center knew that he was likely to commit sexual battery on A.G.  Deny that the County acted with deliberate indifference and/or failed to use reasonable care.  Defendants are without sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

Paragraph 49.  The County is not permitted at this time to reveal specific information regarding the next roommate at Polinsky Children's Center.  Deny that the social workers monitoring AG or this roommate knew that he was likely to commit battery.  Deny that the County failed to use reasonable care.  Defendants are without sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

Paragraph 51.  Admit that Jose Padilla filed a Juvenile Dependency Petition, but on February 24, 2012.  Deny that the report submitted to the Court by Jose Padilla and reviewed by Shelly Paule included lies, falsified evidence or was improper.   Admit that the Juvenile Dependency Petition did not mention the February 25, 2012 report of kissing on the lips involving A.G., but this was discussed by the parties and their lawyers when the hearing resumed after being continued to accommodate Mrs. Greenspan's attorney.  Defendants are without sufficient information or personal knowledge regarding the remaining allegations in this paragraph to either admit or deny them under oath.

Paragraph 52. Admit that the County continued to detain A.G. Deny that there was no evidence to support placing A.G. at Polinsky Children's Center in February of 2012, as the Juvenile Court Judge had made findings supporting this placement. Deny that County employees demanded that Mrs. Greenspan file a TRO or divorce her husband to regain custody of A.G. Deny that such demands are regularly made. Deny that County employees acted with malice.

Paragraph 53. Admit that Donna Greenspan and her attorney were given a Waiver of Rights and a Case Plan, which was signed to indicate agreement to the terms. Admit that Mrs. Greenspan agreed to the process outlined in the Case Plan and agreed to give up specified rights. Deny that there was any "nefarious ends" or "trickery and deceit" involved in having Donna Greenspan sign these documents. Defendants are without sufficient information or personal knowledge regarding the allegations in this paragraph regarding the thought process of Donna Greenspan to either admit or deny them under oath.

Paragraph 54. Admit that a Disposition Report recommending that dependency be terminated was submitted. Deny that there was coercion by the County, as Mrs. Greenspan was represented by counsel during the process. Deny that the Report contained lies, falsified evidence, and intentional omissions of evidence and deny that Mrs. Greenspan or her counsel could not have addressed any perceived problems with the Report.

Paragraph 55. Admit that by March 21, 2012 AG was returned to the custody of his parents. Deny that he was not in the care of his mother and/or grandmother by March1, 2012.

Paragraph 59. Deny that Defendants removing A.G. from his parents' home when his father was arrested and detaining A.G. at Polinsky Children's Center was unlawful . Deny that there were no exigent circumstances. Admit that a warrant was not obtained.

///

1  Paragraph 61. Admit that Defendants were acting under color of law while
2  carrying out their job duties for the County of San Diego. Deny the remainder of
3  the allegations in this paragraph.
4  Paragraph 62. Admit that a warrant was not obtained before A.G. was
5  removed from his parents' home when his father was arrested and A.G. was
6  detained at Polinsky Children's Center. Deny that Donna Greenspan's consent
7  was required. Deny the remainder of the allegations in this paragraph.
8  Paragraph 63. Admit that A.G. was removed from his parents' home when
9  his father was arrested and A.G. was detained at Polinsky Children's Center, where
10 he was examined. Consent was obtained at the time of removal from Mr.
11 Greenspan. Admit that Defendants did not obtain a warrant. Deny that a warrant
12 or court order was required. Deny that there were no exigent circumstances.
13 Paragraph 72. Admit that Defendants were acting under color of law. Deny
14 the remainder of the allegations in this paragraph.
15 Paragraph 76. Deny that A.G. was knowingly placed in a situation where he
16 was likely to be sexually molested or physically battered by dangerous individuals.
17 Admit the remainder of the allegations in this paragraph.
18 Paragraph 77. Admit that Defendants were acting under color of law. Deny
19 that Defendants acted with deliberate indifference to Plaintiffs' rights. Deny the
20 remainder of the allegations in this paragraph.
21 Paragraph 78. Deny that the rights of Plaintiffs were violated. Admit the
22 remaining allegations in this paragraph.
23 Paragraph 92. Admit that the County knew it had to establish appropriate
24 policies. Deny the implication that it did not do so.
25 Paragraph 98. Deny that the City of San Diego Police Department is part of
26 Defendant County of San Diego.
27 Paragraph 110. Admit that the County can be responsible under California
28 law for employees including social workers when the questioned conduct is within

the course and scope of employment duties and is in accord with accepted policies and procedures.  Deny the remainder of the allegations in this paragraph.

Paragraph 122.  Admit that the County owed a duty not to act with deliberate indifference about providing reasonable care and a reasonably safe environment.  Deny the remainder of the allegations in this paragraph.

Paragraph 134.  Admit that the County social workers owed a duty not to act with deliberate indifference in their efforts to provide reasonable care and a reasonably safe environment.  Deny the remainder of the allegations in this paragraph.

Paragraph 135.  Responding to this paragraph is not allowed at this time as a response could call for information protected by a juvenile's right to privacy and seek to invade the juvenile records without an appropriate petition and order.

Paragraph 136.  Responding to this paragraph is not allowed at this time as a response could call for information protected by a juvenile's right to privacy and seek to invade the juvenile records without an appropriate petition and order.

Paragraph 137.  Admit that the County social workers owed a duty not to act with deliberate indifference about providing reasonable care and a reasonably safe environment.  Deny the remainder of the allegations in this paragraph.

Paragraph 138.  Admit that A.G. reported being talked into kissing another boy and later reported that he had been talked in to kissing another boy over his pants in the area of his penis and allowing the other boy to do the same to him, and also reported that he was struck with a stuffed animal by another boy.  Deny the remainder of the allegations in this paragraph.

Paragraph 141.  Deny that A.G. was inappropriately restrained by physical force.  Admit that he was taken to Polinsky Children's Center.

///

///

///

**AFFIRMATIVE DEFENSES**

I

(Qualified Immunity)

When the San Diego City Police were arresting Mr. Greenspan on February 22, 2012, they called the County of San Diego's Drug Endangered Children hotline and reported generally that A.G. was in the home where his father was being arrested, and indicated generally that the drugs existed in the Greenspan home in areas which were accessible to A.G. under the conditions later described in the arrest report. This triggered the procedures followed with respect to Drug Endangered Children. Social Worker Jenifer Williams was on duty to respond to Drug Endangered Children calls. She went to the Greenspan home while the Police, Mr. Greenspan and A.G. were still there. There was a very strong marijuana odor in the area where Jenifer Williams entered the home. A.G. was not in the same room as his father. There were no law enforcement officer guns pointed at A.G. when Jenifer Williams was present. A.G. was talking calmly, not crying, not asking for his parents and did not appear to be upset. The officers indicated that they were arresting Mr. Greenspan, and that if Mrs. Greenspan returned home she would likely face arrest as well. A woman who identified herself as a babysitter arrived outside, but there was no background information available on her. Jenifer Williams had Mr. Greenspan sign Consent/Release of information forms. Jenifer Williams placed a car seat in her vehicle and calmly walked A.G. to the car for transport to Polinsky Children's Center as is required by the Drug Endangered Children protocol. Jenifer Williams asked Mr. Greenspan for information which would enable her to contact Mrs. Greenspan, but Mr. Greenspan did not provide contact information. Jenifer Williams left a business card with her own contact information at the home for use by Mrs. Greenspan in the event she returned to the home after the police left. Hours after leaving the Greenspan home, Jenifer Williams received a call from Mrs. Greenspan, discussed the situation with her and explained to her that A.G. was at Polinsky Children's Center. No warrant or court order was obtained, as the exigent circumstances described above existed. Based upon

1   these facts, no clearly established constitutional rights of Plaintiffs were violated, and it
2   would not be clear to a reasonable social worker in the circumstances confronted by
3   Jenifer Williams that the actions were unlawful.

4   Jose Padilla used information provided by Jenifer Williams and the police in
5   working with Juvenile Dependency Counsel to prepare the Friday February 24, 2012
6   Juvenile Dependency Petition required by the court's process.  He followed the checklist
7   provided by the County for Drug Endangered Children cases.  No knowingly false or
8   deceptive information was provided by Jose Padilla.  No crucial information was
9   knowingly left out of the report by Jose Padilla.  On Monday February 27, 2012 the
10  documents prepared by Jose Padilla and reviewed by his supervisor Shelly Paule on
11  February 24, 2012 were to be considered by the court.  While he was at Polinsky
12  Children's Center on Saturday February 25, 2012, A.G. reportedly told his mother that
13  another boy had kissed him on the mouth and later confirmed to County employees that
14  another boy had kissed him.  The documents submitted to the court on February 24, 2012
15  did not include information on the February 25, 2012 "kissing incident" reported by A.G.
16  because they were prepared before that incident was known to Jose Padilla and Shelly
17  Paule.  Mrs. Greenspan had retained an attorney who asked that the February 27, 2012
18  hearing be continued until February 28, 2012.   Based upon these facts, no clearly
19  established constitutional rights of Plaintiffs were violated, and it would not be clear to a
20  reasonable social worker in the circumstances confronted by Jose Padilla and Shelly
21  Paule that the actions were unlawful.

22  In March of 2012, when he was with his mother A.G. reportedly revealed that
23  more had happened with the other boy at Polinsky and the police were called in.  A.G.
24  reportedly told the police officers who interviewed him that the other boy at Polinsky
25  Children's Center had talked him into kissing each other and also kissing each other over
26  the pants in the area of their penises.

27  Once the new information came to her attention Social Worker Dionne Puckett set
28  up a forensic interview at Chadwick Center.  After the Juvenile Court judge made

findings regarding A.G.'s case, Dionne Puckett and Mike Green communicated with Mrs. Greenspan about the process of getting A.G. back together with her in the family home. Mrs. Greenspan's attorney took part in the process of obtaining a Waiver of Rights and creating and approving a post-dependency Case Plan. There was no coercion by Dionne Puckett or Mike Green. Among the options discussed for addressing the concern that Mr. Greenspan exposed A.G. to danger was seeking a restraining order against Mr. Greenspan or even filing for divorce, but there was never a demand issued by Dionne Puckett or Mike Green on any of the options. They waited until A.G.'s grandmother arrived in San Diego from out of state then made arrangements to discharge A.G. from Polinsky Children's Center under the supervision of his grandmother. Dionne Puckett and Mike Green submitted a March 21, 2012 Jurisdiction/Disposition Report, but there was no coercion involved and the report did not contain information that Dionne Puckett or Mike Green knew to be false or deceptive. Based upon these facts, no clearly established constitutional rights of Plaintiffs were violated, and it would not be clear to a reasonable social worker in the circumstances confronted by Dionne Puckett or Mike Green that the actions were unlawful.

II

(Discretionary Immunity)

The facts listed under "Qualified Immunity" are re-alleged as though set forth here. The individually-sued Defendants followed the Drug Endangered Children process, followed the Juvenile Dependency process and involved Mrs. Greenspan and her attorney in the discussion of options for A.G. The individual Defendants acted in a good faith belief that A.G. could be in danger due to information indicating that: Mr. Greenspan was arrested on drug charges; the Greenspans had drugs in the family home which were confirmed by the police to be accessible to A.G.; Mr. Greenspan refused to give contact information for Mrs. Greenspan; Mrs. Greenspan knew of the drug operation by Mr. Greenspan and his previous arrest on drug charges; The police indicated that they would likely arrest Mrs. Greenspan if she returned home while they were arresting Mr.

Greenspan; and, Mr. Greenspan had reported that another man, presumably a marijuana distributor, was holding him accountable for having drugs confiscated. Defendants took actions they felt to be in A.G.'s best interest during the process of removing him and then returning him to his family. Thus, as to the claims based upon state law, the individual Defendants are entitled to Discretionary Immunity pursuant to California Government Code section 820.4.

### III
### (Liability for Common-law Torts is Limited by Statute)

Defendant County of San Diego cannot be held directly liable for negligence or other common-law torts pursuant to California Government code section 815.

### IV
### (Superseding and Intervening Causes)

The facts listed under "Qualified Immunity" are re-alleged as though set forth here. Defendants assert that they are not liable to the extent Plaintiffs' claimed injuries and damages were caused or contributed to by persons not employed by the County of San Diego, such as members of the Greenspan family, law enforcement personnel, other children who harmed A.G. or the parents of other children who harmed A.G. Pursuant to sections 815 (b) and 820.8 of the Government Code, such conduct by others may constitute a supervening or intervening cause which limits Defendants' liability.

### V
### (Execution and Enforcement of Law)

The facts listed under "Qualified Immunity" are re-alleged as though set forth here. The individual Defendants exercised due care in the execution or enforcement of the law. Thus, as to the claims based on state law, the individual Defendants are immune from liability pursuant to California Government Code section 820.4.

///
///
///

VI

(Immunity of Entity Based on Employee Immunity)

Pursuant to California Government Code section 815.2, Defendant County of San Diego is immune from liability for all claims based on state law for which the individual Defendants are immune from liability.

VII

(Immunity for Judicial or Administrative Proceeding)

The facts listed under "Qualified Immunity" are re-alleged as though set forth here. The individual Defendants removed A.G. from the family home and eventually returned him to the care of his grandmother, then his mother, due to their concerns about his safety and welfare. These actions were part of the juvenile dependency proceeding involving Plaintiffs. Thus, as to the claims based on state law, the individual Defendants are immune from liability for these actions pursuant to sections 815.2, subdivision (b), and 821.6 of the Government Code.

VIII

(Collateral Source)

Pursuant to California Government Code section 985, any judgment entered herein may be reduced for collateral source payments paid or obligated to be paid for services or benefits that were provided before trial commenced.

IX

(Municipal Liability)

The facts listed under "Qualified Immunity" are re-alleged as though set forth here. Defendant County of San Diego cannot be liable for its policies and practices because the County of San Diego's policies and practices were reasonable, constitutional, and lawful at the time of the events described in the Complaint. The County of San Diego's policies and practices are to remove children from their parents' care without a court order when the Agency has reasonable cause to believe the child may be in imminent danger of serious bodily harm if not taken into protective custody. Defendant County of San Diego

cannot be liable because 1) the Agency did not violate Plaintiffs' constitutional rights in removing A.G. from the family home pursuant to the Drug Endangered Children program; 2) any violation of Plaintiffs' constitutional rights was not pursuant to a County of San Diego policy or practice; and 3) the County of San Diego's policies and practices were not the moving force behind any violation of Plaintiffs' constitutional rights.

## X
(Litigation Privilege)

The facts listed under "Qualified Immunity" are re-alleged as though set forth here. As to the claims based on state law, the actions of the individual Defendants were part of the initiation and prosecution of a judicial or administrative proceeding – the Juvenile Dependency process. The individual Defendants are therefore immune from liability for these actions pursuant to the litigation privilege contained in California Civil Code section 47.

## XI
(Absolute Quasi-Prosecutorial Immunity)

The facts listed under "Qualified Immunity" are re-alleged as though set forth here. These actions were part of the potential initiation of a Juvenile Dependency proceeding involving Plaintiffs. Thus, the actions of the individual Defendants were part of the initiation and prosecution of a judicial or administrative proceeding and the individual Defendants are immune from liability for these actions under the doctrine of absolute quasi-prosecutorial immunity.

## XII
(Mitigation of Damages)

Plaintiffs have failed to reasonably mitigate their damages, which bars or diminishes any recovery.

WHEREFORE, Defendants request a jury trial and pray as follows:

1. That the action be dismissed with prejudice;
2. That Plaintiffs take nothing by their action;

3. That Defendants recover their costs of suit incurred herein, including attorneys' fees; and

4. For such other and further relief as the Court deems proper and just.

DATED: May 28, 2013          THOMAS E. MONTGOMERY, County Counsel

By: s/ Christopher J. Welsh
   CHRISTOPHER J. WELSH, Senior Deputy
Attorneys for Defendants County of San Diego,
Jenifer Williams, Jose Padilla, Shelly Paule,
Dionne Puckett and Mike Green
E-mail: christopher.welsh@sdcounty.ca.gov